285 N.W.2d 853 (1979)
In the Matter of J.M.V.D., a Dependent and Neglected Child.
No. 12533.
Supreme Court of South Dakota.
Argued September 14, 1979.
Decided December 5, 1979.
Rehearing Denied December 28, 1979.
Janice C. Godtland, Asst. Atty. Gen., Pierre, Mark V. Meierhenry, Atty. Gen., Pierre, on brief, for respondent, State of South Dakota.
Paul I. Hinderaker of Austin, Hinderaker & Hackett, Watertown, for appellants, A. V. D. and S. V. D.
HECK, Circuit Judge.
On July 16, 1975, the circuit court entered an order terminating all parental rights of A.V.D. and S.V.D. to J.M.V.D., a dependent and neglected child. The order did not provide for adoptive rights. On September 14, 1976, a petition for adoptive rights was filed. A hearing was held on this petition on February 15, 1978. After hearing testimony in the matter the court entered its findings of fact and conclusions of law on May 5, 1978, which adjudicated said child, J.M.V.D., to be a neglected and dependent child, and concluded that the parental rights be terminated and authority be given for adoption of said child.
The appellants contend that the evidence was not sufficient to sustain the court's findings and conclusions.
The respondent in its brief urges that the doctrine of res judicata bars this appeal since no appeal was taken from the order terminating parental rights entered on June 16, 1975. The transcript of the hearing in this matter clearly indicates that the state's attorney representing the petitioner waived the State's right to assert that the 1975 order terminating parental rights was final.[*]
The trial court found, as set forth in Finding VIII:
That the inter-relationship between said child and his parents shown in evidence at said trial to exist at the time of their residency at Henry, South Dakota manifested a failure on the part of the parents to care properly for said child, in *854 that said parents were unable to comprehend or alleviate correctable deficiencies in home care and sanitation affecting said child or to understand or treat the special and serious disablement of the child due to epilepsy.
A summary of the testimony of the State's witnesses, uncontroverted by the appellants, in substance shows that J.M.V.D. was born to A.V.D. and S.V.D. on September 28, 1974. When the baby was a few weeks old the mother noticed a jerking in his leg and contortions in his face. On October 24, 1974, she sought medical attention for the child. The examining physician concluded the the child was having seizures of a very serious nature and immediately hospitalized the child. The child was then taken for specialized treatment where it was determined that although the child would continue to have seizures, their seriousness could be controlled by medication. After hospitalization, the child was placed in foster care by the Department of Social Services with the permission of the parents.
During the latter of part of 1974 and early part of 1975, the appellants lived in Henry, South Dakota. Their place of residence was a small, two-room shack which had no running water or plumbing facilities. The electrical service to the house was discontinued while they lived in Henry. The interior of the house was filthy. The young children slept on a mattress without bed coverings which was on the floor of the room described as the kitchen. There was garbage about the kitchen floor, with mice running around. Boxes of oil-soaked clothing were in the living room. The furniture was filthy. Mice were eating food which was left on the cupboard. The family was very poor with a total monthly income of about $87.00. The father was not employed. The father and mother asked for fuel and food from various people in the Henry community. The oldest boy, D.V.D., age three, was observed outside in the cold weather without shoes or jacket. On one occasion the police were summoned to assist the family when D.V.D. drank fuel oil and needed medical attention.
The trial court further found, as set forth in Finding IX:
That the evidence further discloses no improvement in the attitudes and actions of said parents since that time but rather reveals a course of family conduct which is and would be inimical to the best interests of said child, if returned to the custody of his parents.
As to this matter, a summary of the testimony of the State's witnesses shows that at a time after the family lived at Henry, they moved to Rapid City, South Dakota. J.M.V.D. was in foster care, but D.V.D. was living with his parents. A petition was filed alleging that D.V.D. was a neglected and dependent child. After due hearing the court on September 13, 1977, entered findings that D.V.D. had bruises on his body which were inflicted by a person other than the child himself, that the child was not properly cared for, that the child became lost in the forest while his mother ignored his shouting, that when the child was found he had no shirt on, no underwear, his coat was four sizes too small, he had shoes, but only one had a shoelace, that he was not properly clothed, that he was very dirty, and that no proper attention was paid to his cleanliness. The court further found that the family was living in an automobile and occasionally lived in a tent. The court had a strong question as to whether or not D.V.D. was receiving adequate food. The court concluded that D.V.D. was a neglected child, not being provided with the care, setting and environment to which a child is entitled.
The family next moved to Aberdeen, South Dakota. They moved from hotel room to hotel room during the winter of 1977-78. The family was observed eating in a restaurant by a social worker who was called to view the family. She described D.V.D. as having matted hair, very dirty and without proper clothing.
During all the time that the child, J.M.V.D., was in foster care the parents had arranged to see him only one time. The parents had taken no training concerning the care of children or especially the care of *855 an epileptic child. Constant supervision will be required for the medical care of J.M.V.D.
The appellants countered the testimony of the State's witnesses by their own testimony that they had purchased a trailer house in Aberdeen in which to live. They were waiting for an electrical hookup, had not heated the house and had not moved in prior to the February 15th hearing date. They also testified that the family was receiving substantially more money at the time of the hearing than when they were living at Henry, most of which was from welfare and pension sources. The father testified that he was looking for regular work but had not acquired any at the time of the hearing. The mother promised to be cleaner, to look after the children and to follow the advice of social workers concerning the care of the children.
SDCL 15-6-52(a) provides in part that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."
We have stated in numerous decisions, and very recently in Cooper v. Hileman, 88 S.D. 516, 518, 222 N.W.2d 299, 300 (1974), that "it is incumbent upon this Court to be duly aware of the opportunity of the trial court to judge at first hand the credibility of the witnesses."
These limitations are placed upon the appellate court since "the trial court because of its observation of the witnesses and their demeanor is in a better position than are we to evaluate the persuasiveness of their testimony." State Automobile Casualty Under. v. Ruotsalainen, 81 S.D. 472, 478, 136 N.W.2d 884, 888 (1965).
We hold that the findings of the trial court are supported by substantial evidence and not "clearly erroneous" under the standard of the Rules of Civil Procedure.
SDCL 26-8-6 defines a "neglected or dependent child" as one whose environment is injurious to his welfare. The trial court reached this conclusion based upon its findings heretofore set forth.
Certainly, when it comes to something as important as the welfare of young children, promises of the parents to conform to the standard of care for their children which is expected in our society do not carry as much weight as their past actions of not properly caring for their children.
The order of the trial court is affirmed.
All the Justices concur.
HECK, Circuit Judge, sitting for FOSHEIM, J., disqualified.
NOTES
[*] THE COURT:

My recollection of this case is that an Order was entered under appropriate statute in 1975 which, if not expressely [sic] so stated, was certainly temporary in nature and which did not provide for the child to be made adoptable.
MR. BARTRON:
That is correct. May the record reflect that on June 6th of 1975, your honor, and this Court, entered an Order terminating all parental rights and obligations of the parents, [A.V.D.] and [S.V.D.] to [J.M.V.D.] allegedly a dependent and neglected child. May the record reflect that the Petition before the Court at this time is for hearing, your honor, for securing adoptive rights and as the Court has stated that Order was somewhat temporary in nature and that there is case law to the effect that there may be some problem with the Order of the Court in that no Findings or Conclusions were filed. The State is now prepared to go back into the initial hearing and present supportive grounds for that termination.