2000 SD 146

**Joe LENDS HIS HORSE, Jr.,**
Claimant and Appellee,

v.

**MYRL & ROY'S PAVING, INC.,**
Employer and Appellant,

and

**Heritage Mutual Insurance Company,**
Insurer and Appellant.

No. 21444.

Supreme Court of South Dakota.

Argued Sept. 20, 2000.

Decided Nov. 21, 2000.

William Jason Groves of Graves, Julius & Simpson, Rapid City, for appellee.

Kenneth L. Chleborad of Costello, Porter, Hill, Heisterkamp, Bushnell & Carpenter, Rapid City, for appellants.

AMUNDSON, Justice

[¶ 1.] Myrl & Roy's Paving Inc. appeals the trial court's reversal of the Department of Labor's decision to deny Joe Lends His Horse, Jr. permanent total disability benefits under the Worker's Compensation Act. We reverse.

## FACTS

[¶ 2.] In 1993, Myrl & Roy's Paving, Inc. employed Joe Lends His Horse Jr. as a truck driver in Sioux Falls, South Dakota. Besides driving truck, his duties included helping load and unload the truck, run errands, and other various odd jobs. In May of 1994, Lends His Horse sustained an injury to his back while filling a five-gallon bucket. Initially, Lends His Horse went to Dr. Cass at McKennan Hospital in Sioux Falls. Dr. Cass' initial conclusion was that Lends His Horse suf-

fered an acute temporary injury and prescribed physical therapy. After this initial consultation, he received no other medical treatment for his back in Sioux Falls. He returned to his job a week after the injury and resumed full job duties with no modifications. In August of that same year, Lends His Horse left his job without giving any notice or reason to his employer.

[¶ 3.] After leaving his job, Lends His Horse moved to Rapid City. Shortly thereafter, he received medical treatment through the Public Health Service at Sioux San Hospital. There he saw Dr. Sabow twice, and upon Dr. Sabow's request, Lends His Horse also saw Dr. Ertz, a psychologist. Although Dr. Sabow believed Lends His Horse' employment potential was somewhat limited, he did not place any specific limitations or restrictions on Lends His Horse. No further medical treatment was sought by Lends His Horse.

[¶ 4.] Prior to his back injury in 1994, Lends His Horse had other physical limitations which required surgery including a disk rupture in his lower back in 1992, and a foot drop due to weakness in one of his ankles. In addition to his physical limitations, he also suffers from mental maladies, including anxiety, panic attacks, and depression. Since 1984, he has regularly taken prescribed medication for depression. With all these known problems, however, Lends His Horse has never been medically restricted from performing manual labor. Lends His Horse filed a petition for permanent total disability benefits in December of 1994.

[¶ 5.] The Department of Labor denied Lends His Horse' claim for benefits. The Department found that Claimant's "testimony regarding his pain was not credible." The Department also rejected the testimony of Dr. Ertz as "lacking foundation insofar as it relies upon Claimant's testimony concerning his pain which has been reject-

ed." Likewise, the Department found that employer met its burden of production of showing regularly and continuously available work for persons of his physical ability.

[¶ 6.] The circuit court, the Honorable Steven L. Zinter presiding, reversed and remanded for further proceedings consistent with its prior order in Johnson v. Albertsons (Civ. No. 93–947, September 15, 1997) that credibility evidence cannot be weighed at the prima facie stage. The Department again denied Lends His Horse benefits as it found him not credible and that he failed to satisfy his ultimate burden of persuasion.

[¶ 7.] Upon the second appeal to the circuit court level, the Honorable Lori Wilbur presiding,[1] reversed the Department's decision based solely on the finding that employer failed to satisfy its burden of production on the issue of regular and continuous available employment. Myrl & Roy's Paving appeals. The issue to be decided on appeal is:

> Whether the circuit court erred in reversing the Department's decision to deny odd-lot benefits.

### STANDARD OF REVIEW

[¶ 8.] This Court's scope of review from decisions of administrative agencies is controlled by SDCL 1–26–37, which provides:

> An aggrieved party of the agency may obtain a review of any final judgment of the circuit court under this chapter by appeal to the Supreme Court. The appeal shall be taken as in other civil cases. The Supreme Court shall give the same deference to the findings of fact, conclusions of law and final judgment of the circuit court as it does to other appeals from the circuit court. Such appeal may not be considered de novo.

---

1. Judge Wilbur received this case on reassignment. The record does not indicate the rea-

son for reassignment.

[¶ 9.] Our standard of review for administrative decisions is found in SDCL 1–26–36, and is well established. We will overrule an agency's factual determinations only if we find them to be "clearly erroneous" in light of the entire evidence. Conclusions of Law, however, are fully reviewable. *Permann v. Department of Labor, Unemployment Ins. Div.,* 411 N.W.2d 113 (S.D.1987). "Whether the claimant made a prima facie case that he belongs in the odd lot total disability category is a question of fact." *Shepherd v. Moorman Mfg.,* 467 N.W.2d 916, 919 (S.D. 1991). Thus, the "Department's determination that claimant failed to make the required prima facie showing will not be overturned unless we find that the determination was clearly erroneous." *Id.* "The test is whether after reviewing all the evidence we are left with a definite and firm conviction that a mistake has been made." *Sopko v. C & R Trans. Co. Inc.,* 1998 SD 8, ¶ 6, 575 N.W.2d 225, 228; *See also Day v. John Morrell & Co.,* 490 N.W.2d 720, 723 (S.D.1992). Due to the deference given the Department, "[w]e do not substitute our judgment for that of [Department] on the weight of the evidence." *Shepherd,* 467 N.W.2d at 919.

[¶ 10.] To qualify for odd-lot worker's compensation benefits, a claimant must show that he or she suffers a temporary or permanent "total disability." Our definition of "total disability" has been stated thusly:

> A person is totally disabled if his physical condition, in combination with his age, training, and experience, and the type of work available in his community, causes him to be unable to secure anything more than sporadic employment resulting in insubstantial income.

*Barkdull v. Homestake Mining Co.,* 317 N.W.2d 417 (S.D.1982); *Shepherd,* 467 N.W.2d at 918; *Tiensvold v. Universal Transport, Inc.,* 464 N.W.2d 820, 822 (S.D. 1991). Under the odd-lot doctrine, the ultimate burden of persuasion remains with the claimant to make a prima facie showing that his physical impairment, mental capacity, education, training and age place him in the odd-lot category. If the claimant can make this showing, the burden shifts to the employer to show that some suitable work is regularly and continuously available to the claimant. *Shepherd, supra; Tiensvold, supra.*

[¶ 11.] We have recognized two avenues in which a claimant may pursue in making out the prima facie showing necessary to fall under the odd-lot category. First, if the claimant is "obviously unemployable," then the burden of production shifts to the employer to show that some suitable employment will accommodate claimant's limitations is actually available in the community. *Shepherd,* 467 N.W.2d at 918; *Tiensvold,* 464 N.W.2d at 823. A claimant may show "obvious unemployability" by: 1) showing that his "physical condition, coupled with his education, training and age make it obvious that he is in the odd-lot total disability category," or 2) "persuading the trier of fact that he is in the kind of continuous, severe and debilitating pain which he claims." *Shepherd, supra,* at 918–19. Second, if " 'the claimant's medical impairment is so limited or specialized in nature that he is not obviously employable or regulated to the odd-lot category,' then the burden remains with the claimant to demonstrate the unavailability of suitable employment by showing that he has made [ ] 'reasonable efforts' to find work" and was unsuccessful. *Id.* If the claimant makes a prima facie showing based on the second avenue of recovery, the burden shifts to the employer to show that "some form of suitable work is regularly and continuously available to the claimant." *Id.* (citing *Wendel v. Domestic Seed & Supply,* 446 N.W.2d 265 (S.D.1989)). Even though the burden of production may shift to the employer, however, the ultimate burden of persuasion remains with the claimant. *Shepherd, supra,* at 918.

## ISSUE

**[¶ 12.] Whether the circuit court erred in reversing the Department's decision to deny odd-lot benefits.**

■ **[¶ 13.]** Based on the history of this case, there appears there is a problem distinguishing between the burden of production and the burden of persuasion. There is no question that Claimant has the ultimate burden to show that he is entitled to odd-lot benefits. Therefore, the central issue is whether Claimant has ultimately met its burden of persuasion: that he or she has proven injury to the degree where odd-lot benefits are an appropriate remedy. Here, Claimant has not met this burden.[2] Though Claimant may have met his burden of production, it cannot be said, in light of the Department's findings, that he has met his ultimate burden of persuasion.

**[¶ 14.]** In a workers compensation case, where the claimant's subjective experience of pain is central to the issue of whether recovery is warranted, the credibility of the claimant is always at issue. *Johnson v. Albertson's*, 2000 SD 47, 610 N.W.2d 449; *Wagaman v. Sioux Falls Const.*, 1998 SD 27, 576 N.W.2d 237; *Petersen v. Hinky Dinky*, 515 N.W.2d 226 (S.D.1994). Nowhere in our prior case law have we held

that credibility cannot be attacked at the prima facie stage. To the contrary, we have on several occasions pronounced that credibility of the claimant can be attacked at the prima facie stage. *Baker v. Dakota Mining & Constr.*, 529 N.W.2d 583 (S.D. 1995); *Wagaman, supra; Petersen, supra.* If we were to hold otherwise, cross-examination would be an exercise in futility, and the truth as to credibility of the claimant may go unchallenged. This Court has never endorsed such an illogical process.

■ **[¶ 15.]** "It is incumbent upon [the circuit court] to be duly aware of the opportunity of the [Department] to judge at first hand the credibility of the witnesses." *Matter of J.M.V.D.*, 285 N.W.2d 853, 855 (S.D.1979). The Department is in a better position than the circuit court to evaluate the persuasiveness of their testimony. *Id.* If the credibility determinations made by the Department are flawed, the circuit court should review those determinations and set forth its reasons for rejecting them.

**[¶ 16.]** Moreover, these findings were never specifically addressed at the circuit court level in its reversal of the Department's decision.[3] The circuit court did not

---

**2.** The issue of whether employer met its burden of production as to whether it has shown regular and continuous work available to Lends His Horse does not need to be addressed. Lends His Horse, at the Department level, failed to meet his ultimate burden of persuasion. Thus, a de novo review of the employer's burden under *Rank v. Lindblom*, 459 N.W.2d 247 (S.D.1990) would be superfluous.

**3.** The Department, on remand, made the following Findings of Fact that were never addressed by the circuit court:

....

14. Claimant's testimony concerning his pain is not credible.
15. Claimant's main complaints are that his back goes "crooked" and that his pain never goes away. Claimant stated that his back can go "crooked" at any time and that if it does, he must either sit or lay down.
16. Claimant described a typical day as "[g]et up, drink coffee, watch t.v., take my wife to work at 2:00, come back and watch

my two little kids until she gets off work at 10:30. That's it." Claimant stated that he cannot do anything with his children except just watch them.
17. Claimant also indicates that his pain prevents him from recreational and social activities. He testified that he cannot sit for a long period of time and that he must constantly change positions.
18. On a good day, claimant can sit for half the day. On a bad day, he would lay down all day. Overall, Claimant testified that he has a very sedentary lifestyle.
19. Employer presented a surveillance video showing Claimant performing various activities and some of these activities were quite physically demanding.
20. The video demonstrated that Claimant's pain is not as severe as he claims and that his activities are not as limited as he testified. The activities shown on the tape directly contradict Claimant's testimony that he has a sedentary lifestyle or that his pain prevents him from many activities.

make any Findings of Fact or Conclusions of Law based on the hearing examiner's credibility determinations. The circuit court also forewent any analysis into whether Claimant met his ultimate burden of persuasion that he was totally and permanently disabled. Rather, the circuit court treated the earlier finding made by another circuit court judge that Claimant met his burden of production to make a prima facie case as conclusive proof that Claimant satisfied his ultimate burden of persuasion.

■ [¶ 17.] It is plain that the Department is to weigh the evidence and determine the credibility of witnesses to determine whether a claimant has made a prima facie case. *Johnson, supra,* at ¶ 36; *Petersen, supra,* at 234. Granted there are certain burdens of production that each party must meet. *Shepherd, supra,* at 918–19. Nevertheless, this process of shifting evidentiary burdens should not replace nor hinder the ultimate substantive burden placed on Claimant. *Id.* As we have said before, the "Department's determination that claimant failed to make the required prima facie showing will not be overturned unless we find that the determination was 'clearly erroneous.'" *Shepherd, supra,* at 919. After reviewing all the evidence, it cannot be said, "we are left with a definite and firm conviction that a mistake has been made." *Sopko,* 1998 SD 8, ¶ 6, 575 N.W.2d at 228; *Day,* 490 N.W.2d at 723. Due to the deference given the Department and the substantial amount of evidence contrary to Claimant's position, we will "not substitute our judg-

21. During the first sequence on the video surveillance, Claimant is scraping ice off his windows. The ice appears to be very thick and Claimant is able to lean over at the waist for several minutes as he scrapes. Claimant does not appear to be in any kind of pain as he exerts himself, and he [is] able to move about easily. Claimant is able to get in and out of his car without any apparent difficulty.

22. In the next sequence of the video surveillance, Claimant gets out of his car, picks up a child out of the back seat, and walks around the back of the car carrying the child in one arm. He appears to slip, maintains his balance, and then is able to walk very easily afterwards. Later, Claimant is carrying a child in an infant seat. He bends down to place the child on the ground, he opens the back door of his car and leans into the back seat for a time. Claimant takes an infant seat out of the back, bends over to pick up the child and then leans over again to put the child in the back seat. All this activity takes a few minutes. At no time during this sequence did Claimant display any type of movement that indicated he was in pain.

23. Another sequence on the surveillance tape shows Claimant standing in the entryway of a garage for approximately six minutes. Claimant then walks to his car, carrying a tire in one hand and then drops the tire on the ground. During the next ten minutes, Claimant is able to walk, stand, bend over, lean on a tire, pick up a tire, and move about seemingly without any difficulty. Claimant bends over two times to pick up tires with one hand and put them in his truck. Claimant actually bends over several times to put other items in his trunk. During these activities, Claimant clearly did not appear to be in any pain. Claimant did not demonstrate the actions of someone who claims to be in contiguous, severe and debilitating pain.

24. During another sequence on the video surveillance, Claimant is at a park with family or friends having a picnic. During the course of this picnic, Claimant is able to walk, stand, run, bend, lift, kneel, squat and even lay on a picnic table bench with no apparent difficulty. Throughout all of these activities, Claimant did not display any outward physical indications of disability or that he was experiencing pain.

25. Overall, the video surveillance taped showed Claimant being very physically active. The tape certainly did not portray a person in contiguous, severe and debilitating pain. The surveillance tape provides further support that Claimant has the ability to work.

26. Based on the evidence presented by employer and on the observations made of Claimant during the hearing, Claimant's testimony concerning his pain or any self-limitation is not credible.

27. Claimant has the ability to work. Based on Karrow's testimony, there are jobs available Claimant can perform.

28. Claimant has not met his burden of persuasion that he is permanently and totally disabled.

29. Claimant's request for total disability benefits is denied.

ment for that of [Department] on the weight of the evidence." *Shepherd, supra,* at 919.

[¶ 18.] In accordance with SDCL 1-26-36, the circuit court "shall enter its own findings of fact and conclusions of law or may affirm the findings and conclusions of law or may affirm the findings and conclusions entered by the agency as part of its judgment." *See Schroeder v. DSS,* 529 N.W.2d 589, 591 (S.D.1995); *State, Div. of Human Rights v. Miller,* 349 N.W.2d 42, 45 (S.D.1984). SDCL 1-26-36 "requires the circuit court to make findings of fact and conclusions of law if it modifies or reverses the agency." *Miller,* 349 N.W.2d at 45. Without specific findings made by the circuit court, meaningful appellate review is compromised.

[¶ 19.] If we followed the process employed and defended by Claimant, the hearing would be divided into three distinct stages: the prima facie stage of claimant, the burden of production stage of employer, and the ultimate burden of persuasion stage by claimant. No authority exists for such a rigid tripartite process. Bifurcation of an administrative hearing is unnecessary. A party's opportunity to challenge its opponent's evidence is essential to the adversarial process and a party need not sit on its hands until the burden of production shifts. An administrative hearing is no place for hyper-technical, nice distinctions that slow the very process for which it was created. The purpose of the administrative hearing in workers' compensation is to dispense cases in an efficient, speedy, and fair manner. In order to accomplish this purpose, the claimant's credibility must be in issue throughout the proceeding. This is especially true when the credibility as to claimant's pain is the threshold and ultimate hurdle.

[¶ 20.] We reverse and reinstate the Department's decision, as there is ample support for it in the record. Thus, the remaining issues need not be addressed.

[¶ 21.] MILLER, Chief Justice, and SABERS, KONENKAMP, and GILBERTSON, Justices, concur.