2005 SD 102

Harlan KASSUBE, Claimant
and Appellee,

v.

DAKOTA LOGGING, Employer,

and

Triple R Construction, Employer
and Appellee,

and

Estes Brothers, Employer
and Appellant,

and

Cigna Property & Casualty Company,
Insurer and Appellant,

and

American States Insurance
Company, Insurer,

and

The United Fire Group, Insurer
and Appellee,

v.

Dean Kurtz Construction, Employer
and Appellee,

and

American States Insurance Company,
Insurer and Appellee.

Nos. 23308, 23309.

Supreme Court of South Dakota.

Argued Feb. 16, 2005.

Decided Oct. 12, 2005.

Rodney C. Lefholz, Rapid City, South Dakota, Attorney for claimant and appellee Harlan Kassube.

Steven J. Morgans and Nichole Nachtigal Emerson of Lynn, Jackson, Schultz &

Lebrun, Sioux Falls, South Dakota, Attorneys for employer and appellants Estes Brothers and Cigna Property Casualty Company.

Lisa Hansen Marso and Michael S. McKnight of Boyce, Greenfield, Pashby & Welk, Sioux Falls, South Dakota, Attorneys for employer and appellees Triple R Construction and United Fire Group.

Scott Sumner of Banks, Johnson, Colbath & Kerr, Rapid City, South Dakota, Attorneys for appellees Dean Kurtz Construction and American States Insurance Company.

SRSTKA, Circuit Judge & MEIERHENRY, Justice.

[¶ 1.] **Circuit Judge WILLIAM J. SRSTKA, sitting for Justice RICHARD W. SABERS, disqualified, delivers the majority opinion of the Court on Issue One, which holds that the Department of Labor had subject matter jurisdiction over Estes Brothers' third party petition against Kurtz because of the substantial dispute regarding Kassube's right to benefits.**

[¶ 2.] **Judge SRSTKA delivers the majority opinion of the Court on Issue Two, which holds that Kassube has a permanent total disability under the odd-lot doctrine.**

[¶ 3.] **Justice JUDITH K. MEIERHENRY delivers the majority opinion on Issue Three, which holds that the last injurious exposure rule should be applied in this case because Kassube was not disabled and drawing compensation at the time of his final injury.**

[¶ 4.] **Judge SRSTKA dissents on Issue Three.**

[¶ 5.] **Justice MEIERHENRY delivers the majority opinion on Issue Four, which holds that Estes Brothers is responsible for Kassube's medical expenses relating to his upper back, neck and shoulder from 1990 to the date of any subsequent compensable injury and that subsequent liability must be determined under the last injurious exposure rule.**

[¶ 6.] **Judge SRSTKA dissents on Issue Four.**

[¶ 7.] **SRSTKA, Circuit Judge, writing the majority opinion on Issue One.**

## FACTS AND PROCEDURE

[¶ 8.] As a result of six injuries suffered during employment by four different employers over a course of time, Harlan Kassube (Kassube) commenced a workers' compensation proceeding against these employers and their insurers before the South Dakota Department of Labor (Department). The four employers in the claim were Dakota Logging and its insurer American States Insurance Company (Dakota Logging); Estes Brothers and its insurer Cigna Property & Casualty Company (Estes Brothers); Dean Kurtz Construction and its insurer American States (Kurtz); and Triple R Construction and its insurer United Fire Group (Triple R).

[¶ 9.] Kassube spent his working career in heavy logging and construction labor. The first injury occurred in 1986 while he was employed at Dakota Logging. A piece of timber fell on his head and he sustained neck and head injuries.

[¶ 10.] In November 1990 Kassube fell on a roof while working for Estes Brothers and sustained a cervical and lumbar sprain/strain. This was his second injury. Kassube initially treated with Dr. Gruba, his chiropractor, and received approximately fifteen treatments from the time of injury until May 1991. He received treatments in the fall of 1991 for complaints of low and mid-back pain. Dr. Gruba treated

him once in 1992. He received additional treatments from February to July 1993.

[¶ 11.] In July 1993 Kassube felt as though a rib popped out of place and experienced shortness of breath and stabbing pains in his back. This was his third injury. At that time he was employed by Kurtz. He returned to Dr. Gruba for treatment until August 1993. From September 1993 to January 1994 he continued to receive treatment for mid-back pain and rib pain.

[¶ 12.] In January 1994, while still employed at Kurtz, Kassube reportedly fell in the snow and experienced pain in his shoulder. This was his fourth injury. Dr. Gruba treated him five times from the date of injury until April 1994. In March 1996 he had a left C5–C6 decompression with arthrodesis[1] done. Because of continued shoulder pain, he later underwent an arthroscopic subacromial decompression[2] and shoulder repair.

[¶ 13.] In September 1998 Kassube sustained a fifth injury while working at Triple R. That injury was to the low back and occurred while he was pounding a stake into the ground with an eight pound sledgehammer. He missed one week of work after that injury.

[¶ 14.] The final and sixth injury occurred in November 1998 when he again sustained a low back injury while picking up a sheet of plywood. He was employed by Triple R during this injury. He treated with Dr. Gruba for neck pain and Dr. Teuber, a neurosurgeon, for continued low back pain. He continues to receive treatment for neck and back pain since that

injury. Kassube has not been able to return to work since November 22, 1998.

[¶ 15.] Kassube's initial claim sought benefits from Dakota Logging and Estes Brothers for the first and second injuries sustained in 1986 and 1990.

[¶ 16.] Estes Brothers filed a third-party claim in the proceeding against Kurtz since Kassube suffered the third and fourth injuries while working for Kurtz after Kassube's employment with Estes Brothers. In the meantime Kassube filed an amended petition in the proceeding adding Triple R for the fifth and sixth injuries.

[¶ 17.] After two hearings Department determined that Kassube was entitled to permanent total disability benefits and assigned liability between employers Estes Brothers and Triple R pursuant to SDCL 62–4–29. Department apportioned the liability of permanent total disability benefits making Estes Brothers responsible for two-thirds and Triple R for one-third of benefits. Department further determined that Triple R was responsible for medical expenses for treatment for the low back and Estes Brothers for the upper back, neck, shoulder and headaches.

[¶ 18.] Estes Brothers and Triple R appealed Department's determination to the circuit court. During the proceeding before Department Kurtz moved to dismiss the Estes Brothers' claim for lack of jurisdiction. Department never ruled on this motion and Kurtz did not appeal to the circuit court. Department had previously granted Dakota Logging's motion for summary judgment. No party appealed the Dakota Logging summary judgment.

---

1. C5–C6 decompression with arthrodesis involves removal of disk or disks in the cervical spine to relieve pressure on the spinal nerves with a spinal fusion to fuse adjacent vertebrae.

2. A subacromial decompression was a surgical procedure for impingement syndrome or rotator cuff tears to increase the size of subacromial area in the shoulder and decrease pressure on the muscle.

[¶ 19.] In the appeal to the circuit court Estes Brothers and Triple R raised essentially the same issues presented to us on this appeal. The court denied requested findings and orders from Estes Brothers and Triple R. Kurtz requested no findings or orders from the court. After a hearing, the court entered a judgment affirming Department's decision.

[¶ 20.] Estes Brothers appealed to this Court. Triple R filed a notice of review. Kurtz was still in the lawsuit and participated throughout the appellate process including oral argument.

[¶ 21.] Estes Brothers raises two issues:

Whether Department erred in determining that Estes Brothers is responsible for any permanent total disability benefits awarded to Kassube.

Whether Department erred in determining that Estes Brothers is responsible for all treatment provided to Kassube for his upper back, neck and shoulder from 1990 and forward.

[¶ 22.] Triple R seeks review of two issues:

Whether Department erred in determining Kassube is entitled to permanent total disability benefits under the odd-lot test.

Whether Department erred in apportioning to Triple R one-third of the liability for permanent total disability benefits.

[¶ 23.] Kurtz raises the issue:

Whether Department had subject matter jurisdiction over the claim asserted by Estes Brothers against Kurtz.

## ISSUES

[¶ 24.] Although the four volume record is bulky and the proceeding protracted and procedurally involved, four issues present themselves for review and determination.

Issue One: Should Kurtz be dismissed from the proceeding for lack of jurisdiction?

Issue Two: Is Kassube totally disabled under the odd lot doctrine?

Issue Three: Which theory applies for the assigning of the liability for payment of the total disability benefits—the apportionment statute or the last injurious exposure rule?

Issue Four: Is Estes Brothers liable for all treatment provided to Kassube for his upper back, neck and shoulder?

## STANDARD OF REVIEW

■ [¶ 25.] In workers' compensation cases, the standard of review is controlled by SDCL 1–26–37. *Lagge v. Corsica Co-op.*, 2004 SD 32, ¶ 14, 677 N.W.2d 569, 573. "Under SDCL 1–26–37 when the issue is a question of fact then the clearly erroneous standard is applied to the agency's findings; however, when the issue is a question of law, the actions of the agency are fully reviewable." *Wagaman v. Sioux Falls Const.*, 1998 SD 27, ¶ 12, 576 N.W.2d 237, 240. " 'Mixed questions of law and fact are also fully reviewable.' " *Kermmoade v. Quality Inn*, 2000 SD 81, ¶ 10, 612 N.W.2d 583, 586 (quoting *Zoss v. United Bldg. Centers*, 1997 SD 93, ¶ 6, 566 N.W.2d 840, 843). When a circuit court has reviewed an administrative agency's decision, we review the agency's decision " 'unaided by any presumption that the circuit court's decision was correct.' " *Zoss*, 1997 SD 93 at ¶ 6, 566 N.W.2d at 843.

## ANALYSIS AND DECISION

## ISSUE ONE

[¶ 26.] **Should Kurtz be dismissed from the proceeding for lack of jurisdiction?**

[¶ 27.] Kassube brought no claim against Kurtz. Estes Brothers impleaded Kurtz by a third party petition. Kurtz contends pursuant to SDCL 62–7–12 Department did not have subject matter jurisdiction over claims arising solely between employers and insurers. SDCL 62–7–12 states:

If the employer and injured employee ... fail to reach an agreement in regard to compensation under this title, either party may notify the Department of Labor and request a hearing according to rules promulgated pursuant to chapter 1–26 by the secretary of labor. The department shall fix a time and place for the hearing and shall notify the parties.

[¶ 28.] Although Kurtz raised this issue before the Department and circuit court, neither ruled on it. We are troubled that SDCL 1–26–30.1, 1–26–31, and 15–26A–6 were not followed since there was no notice of appeal filed to the circuit court or this Court. SDCL 1–26–30.1 provides a statutory remedy when an agency fails to rule.

The failure of any agency to make and file a decision within a period of thirty days after any matter has been finally submitted to it, entitles a person authorized to appeal from the record then existing as if the decision had been made adversely to him in whole or in part, unless within such time the agency shall make and serve upon all the parties to the record, an order extending such time for an additional period of not to exceed sixty days, which order shall state the grounds or reasons why such extension is necessary. At the expiration of the thirty days or the time to which extended by such order, such person may present to the agency a proposed decision, and if the same is not adopted within five days after presentation for filing, such person may appeal the same as if

such proposed decision had been denied. This section does not apply to contested cases determined by the Public Utilities Commission.

SDCL 1–26–30.1. Kurtz moved to dismiss. The agency did not rule on the motion. Kurtz had the right to appeal Department's failure to rule on the motion to dismiss directly to the circuit court. The circuit court would then have the matter brought directly to its attention and not inferentially as happened in this case. Such notice of appeal would be the approved procedure since the statute so provides. Even though no notice of appeal brought the matter directly to the circuit court's attention, at the circuit court level, the better procedure would have been for Kurtz to present an order to the court requesting dismissal from the case. Assuming an adverse ruling by the circuit court, the notice of appeal from the denial would bring the matter squarely before us. All parties could then have directly addressed the issue.

[¶ 29.] Kurtz asserts that since Kassube has not brought a claim against it, it should not be subject to the jurisdiction of Department because SDCL 62–7–12 involves disputes between employers and injured employees only. Kurtz relies on *Medley v. Salvation Army, Rapid City Corps*, 267 N.W.2d 201 (S.D.1978) to show that Department does not have jurisdiction in this matter. In *Medley*, there was no dispute of liability to the claimant under the workers' compensation laws. Rather the sole dispute was between two insurers on whether one insurer was solely liable or if the two insurers were equally liable. *Medley*, 267 N.W.2d at 202. The court ruled that Department was without jurisdiction to hear and determine the petition filed by the insurer. *Id.* at 203.

The general rule appears to be that, when it is ancillary to the determination

of the employee's right, the compensation commission has authority to pass upon a question relating to the insurance policy, .... This is, of course, in harmony with the conception of compensation insurance as being something more than an independent contractual matter between insurer and insured. On the other hand, *when the rights of the employee in a pending claim are not at stake, many commissions disavow jurisdiction and send the parties to the courts for relief. This may occur when the question is purely one between two insurers,* one of whom alleges that it has been made to pay an undue share of an award to a claimant, and the award itself is not being under attack.

*Id.* at 203 (quoting 4 Larson, Workmen's Compensation Law § 92.40). *See also Kermmoade,* 2000 SD 81 at ¶ 25, 612 N.W.2d at 591; *Truck Ins. Exchange v. Kubal,* 1997 SD 37, ¶ 12, 561 N.W.2d 674, 676.

[¶ 30.] This case is distinguished from *Medley* and other cases where we have applied the general rule. Here, there is a substantial dispute regarding Kassube's right to disability and medical benefits,

and therefore, Kassube's rights are at stake. This is not a dispute *purely* between insurers like it was in *Medley*[3], *Truck Ins. Exch.*[4] and *Kermmoade*[5].

[¶ 31.] GILBERTSON, Chief Justice, and ZINTER and MEIERHENRY, Justices, and MILLER, Retired Justice, concur. ·

[¶ 32.] **SRSTKA, Circuit Judge, writing for the majority on Issue Two.**

## ISSUE TWO

[¶ 33.] **Is Kassube totally disabled under the odd-lot doctrine?**

� [¶ 34.] "Whether a claimant is entitled to odd-lot disability benefits is a question of fact subject to review under the clearly erroneous standard." *Enger v. FMC,* 1997 SD 70, ¶ 22, 565 N.W.2d 79, 85. SDCL 62–4–53 describes the criteria for obtaining permanent total disability benefits under the odd lot doctrine:

An employee is permanently totally disabled if the employee's physical condition, in combination with the employee's age, training and experience and the

---

3. This was a dispute between Aetna Life & Casualty Company and Western Insurance Company as to who is to reimburse the widow of G. William Medley. No question was raised by the widow of the employee, who had been receiving the full amount of her entitlement, and no question is raised by the employer, Salvation Army. The employer did not dispute its liability to the claimant under the workers' compensation laws. The dispute was between the two insurers. *Medley,* 267 N.W.2d at 202.

4. One insurer had previously paid *undisputed* benefits and that insurer was only seeking contribution or reimbursement from another employer. This Court noted:

that the pleadings failed to "indicate that Employer or any insurer disputed [claimant's] entitlement to benefits." Furthermore, there was no allegation that [claim-

ant] received inadequate benefits. In fact, Department determined that the sole issue to address concerned the dispute between the insurers as to payment of the benefits. *Truck Ins. Exch.,* 1997 SD 37 at ¶ 11, 561 N.W.2d at 676.

5. The first employer voluntarily entered into an agreement to pay workers' compensation and later brought a claim against another insurer for contribution or indemnity. This Court noted that:

by voluntarily entering into the 1989 Agreement [to pay the benefits,] [the first employer and insurer] undertook that responsibility *to [Kermmoade].* Resolution of any remaining dispute between those two insurers is not properly within the jurisdiction of the Department of Labor.
*Kermmoade,* 2000 SD 81 at ¶ 22, 612 N.W.2d at 590.

type of work available in the employee's community, cause the employee to be unable to secure anything more than sporadic employment resulting in an insubstantial income.

SDCL 62–4–53. *See also McClaflin v. John Morrell & Co.*, 2001 SD 86, ¶ 7, 631 N.W.2d 180, 183; *Enger,* 1997 SD 70, ¶ 21, 565 N.W.2d at 85. This Court has previously recognized two avenues to make the required prima facie showing for inclusion in the odd-lot category. *Petersen v. Hinky Dinky*, 515 N.W.2d 226, 231 (S.D. 1994). "First, if the claimant is '**obviously unemployable**,' then the burden of production shifts to the employer to show that some suitable employment is actually available in claimant's community for persons with claimant's limitations." *Id.* (citations omitted)(emphasis in original). Obvious unemployability may be shown by:

> (1) showing that "his physical condition, coupled with his education, training and age **make it obvious** that he is in the odd-lot total disability category," or (2) persuading the trier of fact that he is in fact in the kind of continuous, severe and debilitating pain which he claims. *Id.* (citation omitted). Second, "if 'the claimant's medical impairment is so limited or specialized in nature **that he is not obviously unemployable** or relegated to the odd-lot category' then the burden remains with the claimant to demonstrate the unavailability of suitable employment by showing that he has unsuccessfully made 'reasonable efforts' to find work."

*Id.* at 232 (quoting *Shepherd v. Moorman Mfg.*, 467 N.W.2d 916, 919 (S.D.1991)) (emphasis added). Under this test, if the claimant is "obviously unemployable," he will not bear the burden of proving "that he made reasonable efforts to find employ-

ment in the competitive market." *Id.* Likewise, it is only when the claimant produces substantial evidence that he is not employable in the competitive market that the burden shifts to the employer. *Id.*

[¶ 35.] We look to the facts of the case to determine if there is sufficient evidence to support Department's findings that Kassube has a permanent total disability under the odd-lot doctrine. The suffering of continuous, severe and debilitating pain is sufficient in itself to establish that a claimant is obviously unemployable when pain is the basis of a claim for inclusion in the odd-lot doctrine. *Petersen,* 515 N.W.2d at 232.

[¶ 36.] At the time of the first hearing, Kassube was forty-two years old. He completed the tenth grade and obtained his GED in 1999. His entire working career involved heavy labor in the construction industry. Kassube testified that his pain flares up on a regular basis, approximately three times per week. On those days he is totally unable to function because he has to spend approximately eight to nine hours lying down. He has severe headaches accompanied by nausea, vomiting and blurry vision. He has low back pain that can occur suddenly and force him to spend hours in bed. He requires prescription and non-prescription pain medication and also uses ice packs and a TENS [6] unit to attempt to control his pain. Physical activity aggravates and increases the back pain. Kassube took an examination for his GED in January 1999. This is approximately a five hour test. Because he could not tolerate the length of the exam in one sitting he was required to return the next day to complete the exam. He and his wife both testified that he is no longer able to participate in activities with

---

**6.** TENS unit is a transcutaneous electrical nerve stimulator used to decrease pain by delivering small electrical pulses to the body through electrodes placed on the skin.

his children, household chores and recreational activities. Kassube's wife testified that approximately once a month her husband has to spend three or four days in bed in a dark room. She further testified that her husband is like an eighty-year-old man who hardly moves, is "crimped up, all the time," stiff, and shuffles as he walks with "tremendous difficulty."

[¶ 37.] Dr. Lawlor, one of Kassube's treating physicians, testified that Kassube was incapable of working as a result of the low back injury and neck injury. William Peniston, a vocational expert, completed an evaluation and concluded in his report that Kassube is unable to return to any of the occupations that he has held in the past. Furthermore, Peniston stated that because of Kassube's constant and severe debilitating pain he does not have sufficient transferable work skills to allow him to be employed in alternative occupations. Peniston concluded that Kassube is obviously unemployable because of his physical limitations as a result of his chronic debilitating pain. The employers/insurers offered the testimony of James Carroll, a vocational rehabilitation specialist, who had been asked to evaluate Kassube's ability to work based on his low back disability only. Carroll did not conduct a labor market search. The employers/insurers offered no other evidence of the availability of work for Kassube thus failing to meet their burden of showing that some suitable employment is actually available in Kassube's community for persons with his limitations.

[¶ 38.] Although the employers/insurers presented depositions, affidavits and written reports from other physicians stating that Kassube is able to work in a light duty or sedentary job, Department, as the trier of fact, was able to observe and evaluate live testimony from Kassube, Kassube's wife and two vocational rehabilitation specialists. Department found Kassube to be a credible witness. Kassube persuaded Department that he is experiencing continuous, severe and debilitating pain. He made a prima facie showing that he is in the odd-lot category. *See generally Shepherd,* 467 N.W.2d at 919. Furthermore, his physical condition as a result of his severe debilitating pain combined with this age, training and experience make him obviously unemployable. We affirm Department's decision that Kassube has a permanent total disability under the odd-lot doctrine.

[¶ 39.] GILBERTSON, Chief Justice, and ZINTER and MEIERHENRY, Justices, and MILLER, Retired Justice, concur.

[¶ 40.] **MEIERHENRY, Justice, writing for the majority on Issue Three.**

### ISSUE THREE

[¶ 41.] **Which theory applies for the assigning of the liability for payments of the total disability benefits—the apportionment statute or the last injurious exposure rule?**

[¶ 42.] Department applied the apportionment statute found at SDCL 62-4-29 and determined that Estes Brothers should be responsible for two-thirds of Kassube's permanent total disability benefits and Triple R for one-third. SDCL 62-4-29 provides:

> As to an employee who before the accident for which he claims compensation was disabled and drawing compensation under the terms of this title, the compensation for each subsequent injury shall be apportioned according to the proportion of incapacity and disability caused by the respective injuries which he may have suffered.

Estes Brothers contends that because Kassube was not receiving compensation

at the time of his subsequent injury with Triple R, the apportionment statute is inapplicable and, therefore, the last injurious exposure rule should govern the matter. We find merit in this contention.

[¶ 43.] This Court has previously adopted the last injurious exposure rule. "Under that rule, [w]hen a disability develops gradually, or when it comes as the result of a succession of accidents, the insurance carrier covering the risk at the time of the most recent injury or exposure bearing a causal relation to the disability is usually liable for the entire compensation." *Enger*, 1997 SD 70 at ¶ 12, 565 N.W.2d at 83. In 1999 that rule was codified at SDCL 62–1–18. The statute provides:

> If an employee who has previously sustained an injury, or suffers from a preexisting condition, receives a subsequent compensable injury, the current employer shall pay all medical and hospital expenses and compensation provided by this title.

The statute requires that there be a subsequent "compensable" injury in order for liability for expenses and compensation to transfer to a subsequent employer. Whether a subsequent injury is compensable is determined by SDCL 62–1–1(7).[7]

We have interpreted the last injurious exposure rule to exclude a mere "recurrence" of a previous injury but to include an "aggravation" of a previous injury. *See Titus v. Sioux Valley Hosp.*, 2003 SD 22, ¶ 13, 658 N.W.2d 388, 390–91.

[¶ 44.] Our prior cases considering an aggravation, however, did not involve a situation where the injured employee had already been drawing disability compensation at the time of the subsequent injury. *See generally Titus*, 2003 SD 22 at ¶¶ 2–8, 658 N.W.2d at 389–390; *Paulson v. Black Hills Packing Co.*, 1996 SD 118, ¶¶ 2–5, 554 N.W.2d 194, 195. Therefore, we have never considered and applied the apportionment statute in a subsequent injury case. In fact, a review of our past cases reveals only one successive injury case where the apportionment statute has been made an issue. *See Truck Ins. Exchange*, 1997 SD 37, 561 N.W.2d 674. In that case, the employee's injury was found to be a single continuing injury without any "subsequent" injury having ever occurred. This Court then rejected apportionment because a "continuing" injury to the employee's hands did not qualify as a "subsequent" injury under the apportionment statute. *Id.* at ¶ 16, 561 N.W.2d at 677 (quotations and citation omitted). We also

---

7. (7) "Injury" or "personal injury," only injury arising out of and in the course of the employment, and does not include a disease in any form except as it results from the injury. An injury is compensable only if it is established by medical evidence, subject to the following conditions:

    (a) No injury is compensable unless the employment or employment related activities are a major contributing cause of the condition complained of; or

    (b) If the injury combines with a preexisting disease or condition to cause or prolong disability, impairment, or need for treatment, the condition complained of is compensable if the employment or employment related injury is and remains a major contributing cause of the disability, impairment, or need for treatment;

    (c) If the injury combines with a preexisting work related compensable injury, disability, or impairment, the subsequent injury is compensable if the subsequent employment or subsequent employment related activities contributed independently to the disability, impairment, or need for treatment.

The term does not include a mental injury arising from emotional, mental, or nonphysical stress or stimuli. A mental injury is compensable only if a compensable physical injury is and remains a major contributing cause of the mental injury, as shown by clear and convincing evidence. A mental injury is any psychological, psychiatric, or emotional condition for which compensation is sought;

noted that according to the plain language of the apportionment statute, it applies only in cases where the employee is "drawing compensation before the subsequent injury." *Id.*

[¶ 45.] As acknowledged in *Truck Ins. Exchange,* SDCL 62–4–29 provides specific criteria for when apportionment in subsequent injury cases should occur. It requires that the injured employee must be disabled and drawing benefits before the subsequent accident in order for apportionment to apply. We interpret the statute to mean that an employee must be drawing *disability benefits* before the subsequent injury occurs. This interpretation is natural, and supports the logical purpose of the statute's express prerequisites to apportionment. By requiring the worker to be drawing disability benefits prior to the subsequent injury, the prior percentage of disability will have been determined. Because the prior percentage of disability has already been determined, apportioning liability is a relatively simple task and would not require further litigation over the issue. Any increase to the prior disability is apportioned to the subsequent employer.

[¶ 46.] Therefore, based on the language of the apportionment statute itself, in addition to our prior treatment of subsequent injury cases, we hold that apportionment only applies in situations where there is a subsequent injury, as opposed to a continuing or recurring injury, and the subsequent injury must have occurred while disability benefits were being drawn. In effect, the apportionment statute is an exception to the last injurious exposure rule that is codified at SDCL 62–1–18, and apportionment should only apply if the injured employee was already drawing disability benefits at the time of the subsequent accident.

[¶ 47.] In the present case, Kassube incurred two separate and distinct injuries, each occurring while Kassube was working for different employers with different insurers. In order to determine if apportionment should occur under the circumstances of this subsequent injury, we must determine whether the requirements of SDCL 62–4–29 have been met. The determinative question in this case thus becomes: Was Kassube disabled and drawing compensation before the last accident; *i.e.* was he drawing disability benefits? A review of the record reveals the answer is no.

[¶ 48.] Kassube had never been deemed disabled at any time prior to the final accident. Likewise, he had never drawn disability compensation at any time prior to the date of the last accident. At the proceedings which occurred after the last accident, Kassube was awarded back medical expenses, but was not awarded disability compensation for any periods prior to the last accident. Thus, Kassube was not actually drawing benefits or adjudicated disabled at the time of the last accident. Further, he has never been adjudicated disabled or awarded disability benefits for any periods prior to the last accident. Although Kassube had filed a petition for hearing to receive payments and benefits for disability from Estes Brothers before the final accident, he was never awarded any disability compensation for any time prior to that final injury.

[¶ 49.] For this same reason, the Iowa case cited to by Triple R is distinguishable. *See Excel Corp. v. Smithart,* 654 N.W.2d 891 (Iowa 2002). In that case, it was determined that the employee was entitled to disability benefits for the period of time after the first injury but before the second injury. *Id.* at 895. The court found that even though this determination was made after the second injury had occurred, and thus the employee was not technically drawing benefits at the time of the second

injury, the benefits would be applied retro-actively; therefore, the court would apply the apportionment statute in the same ret-roactive manner. *Id.* at 899. There was not a similar application or award of dis-ability benefits in this case. Since there was no disability compensation awarded retroactively to the time prior to the final injury, the retroactivity principle espoused in *Excel* is inapplicable.

[¶ 50.] Because Kassube was not dis-abled and drawing compensation at the time of his final injury, the last injurious exposure rule codified in SDCL 62-1-18 should have been applied in this case. Ap-portionment is only appropriate where the employee is drawing disability compensa-tion before the time of the subsequent injury. Thus, Department's application of apportionment was an error of law. In this case, Department should have applied the last injurious exposure rule. Depart-ment, however, did not even consider the last injurious exposure rule. Therefore, we cannot construe its findings so as to determine how that rule applies under the facts of this case. We reverse the trial court on this issue and remand for an application of the last injurious exposure rule.

[¶ 51.] GILBERTSON, Chief Justice, and ZINTER, Justice, and MILLER, Retired Justice, concur.

[¶ 52.] SRSTKA, Circuit Judge dissenting on Issue Three, *infra* at ¶ 63.

[¶ 53.] **MEIERHENRY, Justice, writing for the majority on Issue Four.**

## ISSUE FOUR

[¶ 54.] **Is Estes Brothers liable for all treatment provided to Kassube for his upper back, neck and shoulder?**

[¶ 55.] Estes Brothers contends that it should not be responsible for unpaid medical expenses because Kassube failed to meet his burden of proving that the expenses arose out of his course of em-ployment with Estes Brothers. In addi-tion, Estes Brothers contends that the la-ter injury sustained at Kurtz Construction in July 1993 independently contributed to the need for treatment thereafter. How-ever, there are no work records showing that Kassube sustained a shoulder injury during his employment at Kurtz Construc-tion.[8] Instead, the majority of the medical records and depositions of treating physi-cians indicate that his neck and shoulder problems resulted from the injuries he sustained while working for Estes Broth-ers in 1990. We review such documentary evidence *de novo*. *Haynes v. Ford*, 2004 SD 99, ¶ 14, 686 N.W.2d 657, 661.

[¶ 56.] Kassube sought treatment from Dr. Gruba after the 1990 Estes Brothers injury. Dr. Gruba treated claimant on an ongoing basis, primarily for cervical and thoracic treatments. Dr. Gruba's records reveal at least two complaints concerning Kassube's neck during the course of these treatments. Then in January 1995 Dr. Gruba's records reflect that Kassube had a significant amount of left shoulder pain that could have been associated with a disc. Dr. Caughfield's April 1995 records reflect that Kassube had a long standing history of neck problems. Throughout that year and into 1996 Kassube continued to treat with Dr. Caughfield for neck pain and headaches. Dr. Finley's notes similar-ly reflect that in March 1995 Kassube com-plained of neck pain radiating to the left upper extremity and shoulder.

---

8. One of Dr. Gruba's medical records has a notation saying that Kassube had fallen at Kurtz and hurt his shoulder.

[¶ 57.] Kassube underwent a C5–C6 cervical compression and arthrodesis in March 1996 for cervical disc disease. He then underwent a suprascapular nerve decompression and subacrominal decompression of the left shoulder in September 1996 by Dr. Fromm.[9] There is no mention of causation in Dr. Fromm's records except for a cryptic note stating "these injuries could easily have been caused by his originally [sic] working condition."[10] Dr. Lawlor's consultation report of October 1999 reflects that Kassube sustained a work-related injury in 1990 when he slipped and landed on his left shoulder, suffering an injury to his left shoulder and neck. It further provides that after the neck surgery Kassube had continued pain in his neck that radiated into his shoulder.

[¶ 58.] Dr. Bert examined Kassube for an independent medical examination in June 1996. As a result of that examination, he gave an opinion that the injury Kassube suffered while employed at Estes Brothers is the injury that caused his shoulder pain. There is sufficient evidence in the record to support Department's findings that Estes Brothers is responsible for upper back, neck and shoulder treatments after 1990.

[¶ 59.] A subsequent compensable injury, however, would limit that liability. The law as stated in SDCL 62–1–18 shifts the risk and responsibility of payment to the employer responsible for the subsequent compensable injury. The plain meaning of the statute requires that "the current employer *shall* pay *all* medical and hospital expenses and compensation provided by this title" in cases where "an employee who has previously sustained an injury, or suffers from a preexisting condition, re-ceives a subsequent compensable injury." SDCL 62–1–18 (emphasis added). Department, however, did not apply this rule. *See supra* Issue Three. Therefore, we remand for a determination of liability under the last injurious exposure rule.

## CONCLUSION

[¶ 60.] Consequently, we remand this case to the circuit court for the application of, and determination of, liability under the last injurious exposure rule.

[¶ 61.] GILBERTSON, Chief Justice, and ZINTER, Justice, and MILLER, Retired Justice, concur.

[¶ 62.] SRSTKA, Circuit Judge, dissents.

**SRSTKA, Circuit Judge, dissenting on Issue Three and Four.**

[¶ 63.] I must dissent to the majority's decision on Issue Three and Four. The issue here is which of two statutes applies. The majority uses the last injurious exposure rule found in SDCL 62–1–18 and Department applied the apportionment statute found in SDCL 62–4–29. I think that the rationale for using the apportionment statute is well founded in fact and law and should determine these issues.

[¶ 64.] SDCL 62–4–29 states:

As to an employee who before the accident for which he claims compensation was disabled and drawing compensation under the terms of this title, the compensation for each subsequent injury shall be apportioned according to the proportion of incapacity and disability caused by the respective injuries which he may have suffered.

---

9. The liability for the medical expenses associated with this surgery is among the disputed liabilities.

10. There is no indication of the original working condition to which Dr. Fromm was referring.

[¶ 65.] The key to the majority's decision is its assertion that Kassube fails to meet the two prong test of the apportionment statute in that he was not disabled and drawing compensation; therefore, the apportionment statute does not apply and the entire case must be sent back for a further adjudication. Let us examine the foundation of that assertion.

[¶ 66.] The workers' compensation statutes do not define the term "disabled" alone but do define temporary disability and total disability. Total or partial temporary disability is defined as "the time beginning on the date of injury, subject to the limitations set forth in 62–4–2, and continuing until the employee attains complete recovery or until a specific loss becomes ascertainable, whichever comes first." SDCL 62–1–1(8). An "ascertainable loss ... becomes ascertainable when it becomes apparent that permanent disability and the extent thereof has resulted from an injury and that the injured area will get no better or no worse because of the injury[.]" SDCL 62–1–1(2). Permanent total disability, as described in SDCL 62–4–53, is discussed in Issue Two, *supra*.[11] We agreed with Department's determination that Kassube met the criteria for permanent total disability. However, that determination was not made until after this proceeding commenced. Kassube filed his petition for hearing on March 2, 1998 and that was prior to the injuries sustained while employed at Triple R.

[¶ 67.] Dr. Bert gave his opinion that Kassube had a ten percent permanent partial disability in 1996. Dr. Wayne Anderson conducted an independent medical evaluation in February 2000 and also noted that Kassube had an impairment of his neck consistent with Dr. Bert's opinion. There is sufficient evidence in the record to show that Kassube was disabled to some extent prior to the time of the September 1998 injury. The first prong of the test is met because Kassube was disabled.

[¶ 68.] Let us examine the compensation prong of the test. The workers' compensation statutes do not define the term "compensation" alone but they do describe the computation for benefits based on the extent of disability. *See, e.g.*, SDCL 62–4–2 (describing the waiting period for temporary disability benefits); SDCL 62–4–3 (describing amount of temporary total disability compensation); SDCL 62–4–5 (describing compensation for partial disability); SDCL 62–4–7 (describing compensation for permanent total disability). Also in the chapter for compensation of injury or death related to workers' compensation is a provision for necessary medical and hospital expenses to be borne by the employer. *See* SDCL 62–4–1.

[¶ 69.] Compensation of work related injuries is also discussed in the chapter entitled "Workers' Compensation Insurance." *See* SDCL ch 58–20. An employer may have liability for indemnity compensation or medical losses which includes "payment made to or on behalf of the injured worker for medical costs, loss of wages or injuries resulting in ... [a disability] as defined in §§ 62–1–1, 62–4–1, and 62–4–6." *See* SDCL 58–20–22 and 58–20–23. Construing the statutes of SDCL ch 58–20 and ch 62–4, we find that an injured worker is receiving compensation when medical expenses are being paid by an employer for the benefit of the injured worker. We must conclude that Kassube was drawing compensation for his ongoing medical treatments at the time of his September

---

11. Department found Kassube to be permanently and totally disabled from and after the November 2, 1998 back injury.

1998 injury, and the second prong of the test is met.

[¶ 70.] The majority distinguishes Iowa precedent that is clearly on point. The Iowa Supreme Court considered a statute similar to SDCL 62–4–29. *See generally Excel,* 654 N.W.2d at 899. The employee in that case had filed a claim in 1997 for a 1995 injury and then filed a claim in 1999 for a 1997 injury. A consolidated hearing was held, and therefore the determination of compensation on the first injury had not been made at the time a claim was made for the later injury. *Id.* at 894–95. Even though the employee was not receiving compensation at the time of the second injury, the court recognized that "compensation awards are made retroactive to the date of injury and we apply the statute in the same manner." *Id.* at 899. The Iowa Supreme Court has stated that "the statute applies even though the employee is not receiving but is entitled to receive such benefits at the time of the secondary injury ... because benefits are retroactive to the date they are due." *Mycogen Seeds v. Sands,* 686 N.W.2d 457, 466 (Iowa 2004) (citing *Excel,* 654 N.W.2d at 899).

[¶ 71.] The majority's reliance is also misplaced on the precedent that it follows. After reviewing the cases in which the last injurious exposure rule has been applied, I observe that those cases have involved recurrent injuries or an aggravation of a preexisting injury or condition. This rule has not been applied where there are injuries to two distinct body parts such as in this case. In addition, the apportionment of compensation is a factor generally making the statute somewhat difficult to apply. In this case, however, there is evidence of a ten percent whole person impairment rating for the neck and five percent for the back injury. I agree with Department that the last injurious rule easily applies to successive injuries to the same area of the body but, in this case, where there are two separate and distinct conditions, apportionment is the proper application of the law. In order for injuries to be apportioned, "an impairment must have been independently producing some degree of disability before the accident, and must be continuing to operate as a source of disability after the accident." 5 Larson's Workers' Compensation Law § 90.04[3] (2000). Here there is clearly a neck injury that existed prior to the back injury producing some degree of disability before the accident and continuing to operate as a source of disability after the accident.

[¶ 72.] Evidently a problem is that we find a paucity of authority for the use of the apportionment statute in South Dakota, even though it was enacted in 1917. Regardless I am convinced that its use in this case based on the facts as developed in these proceedings is correct. We must give effect to legislative enactments to the fullest extent possible, and the content of the workers' compensation statutes lies within the province of the legislature.

[¶ 73.] Additionally on this matter, the record clearly shows that the facts determine which statute should apply. The administrative agency has determined that the apportionment statute applies. This Court has often ruled that it must not substitute its judgment for that of the factfinder unless clearly erroneous. *Mettler v. Sibco, Inc.,* 2001 SD 64, ¶ 7, 628 N.W.2d 722, 723; *Lends His Horse v. Myrl & Roy's Paving,* 2000 SD 146, ¶ 9, 619 N.W.2d 516, 519; *Johnson v. Albertson's,* 2000 SD 47, ¶ 22, 610 N.W.2d 449, 453; *Abild v. Gateway 2000, Inc.,* 1996 SD 50, ¶ 11, 547 N.W.2d 556, 559. The majority fails to show where the agency was clearly erroneous. The majority desires to use the last injurious exposure rule and substitutes its judgment and interpretation of the facts over the fact finder.

[¶ 74.] Finally, the result of this decision is to remand the case back for further adjudication. The great volume of this record is due for further augmentation, and no end is in sight. Workers' compensation cases are becoming endurance contests. Incrementally the rules of the game constantly change. The last injurious exposure rule, for instance, is a court made rule; however, the legislature enacted it into law and now we face it here. Where is the speedy determination of an injured worker's claims that was the great impetus for the adoption of the workers' compensation scheme? It is lost in the smoke of the modern legal battlefields fought over by the competing insurance companies. To affirm the circuit court would end the battle.

[¶ 75.] I would affirm the circuit court in all respects. The undecided matter of Kurtz in Issue One should be dismissed as moot.

[¶ 76.] SRSTKA, Circuit Judge, for SABERS, Justice, disqualified.

[¶ 77.] MILLER, Retired Justice, for KONENKAMP, Justice, disqualified.