2002 SD 123

**Tanthony SANDNER, Claimant and Appellant,**

v.

**MINNEHAHA COUNTY, Employer and Appellee,**

and

**SDML Workers Compensation Fund, Insurer and Appellee.**

**Nos. 22193, 22196.**

Supreme Court of South Dakota.

Considered on Briefs May 28, 2002.

Decided Oct. 9, 2002.

Kent R. Cutler and Kimberly R. Wassink of Cutler & Donahoe, Sioux Falls, for claimant and appellant.

Comet H. Haraldson of Woods, Fuller, Shultz & Smith, Sioux Falls, for appellees.

BASTIAN, Circuit Judge.

[¶ 1.] In this appeal we uphold the determination of the South Dakota Department of Labor (Department) and the circuit court that a workers' compensation claimant was not permanently and totally disabled.

## FACTS

[¶ 2.] Anthony Sandner (Sandner) injured his back at the Minnehaha County Courthouse in April 1997 while employed by County as a custodian. He sustained a right-sided herniation at the L4–5 level. County and its insurer, the South Dakota Municipal League (SDML), accepted the injury as compensable. Dr. Matthew McKenzie performed a microdiskectomy on Sandner in June 1997. Dr. McKenzie released Sandner to return to full time work in August 1997, but restricted his activity. Under the restrictions Sandner could not move furniture, scrub on his hands and knees, or lift over 30 pounds.

[¶ 3.] When Sandner reported for work County offered him an alternate position that incorporated Dr. McKenzie's limitations. The new position was similar to his former one and would pay him the same wage but it involved working at night instead of during the day as he had done before. Sandner rejected County's offer and voluntarily resigned in August 1997 because he did not want to work at night. After his resignation he had no further discussion with County concerning future employment.

[¶ 4.] In September 1997 Sandner reinjured his back while lifting a laundry basket. A new herniation was found on the left side. Dr. McKenzie performed a second microdiskectomy in October 1997. After the surgery, Dr. McKenzie instructed Sandner to take "a common sense approach to living life" and recommended that he avoid lifting over 35 to 40 pounds, avoid constant stooping and bending, and stop smoking cigarettes. In November 1997 Sandner was released to work and one year later Dr. McKenzie assigned him a ten percent whole body impairment.

[¶ 5.] While County and SDML admitted that the April 1997 injury was compensable, it denied benefits for the second injury. The issues of compensability and damages were bifurcated. After a hearing in 1999, Department found that the first injury was a major contributing cause of the second injury. The finding was affirmed on appeal to the circuit court.[1]

[¶ 6.] After a hearing on damages in August 2000, Department found that while Sandner could not return to a custodial position, he was not totally and permanently disabled. The circuit court affirmed and Sandner appeals.

## STANDARD OF REVIEW

[¶ 7.] Our standard of review was aptly stated in *Grauel v. South Dakota School of Mines and Technology*, 2000 SD 145, 619 N.W.2d 260:

We make the same review of the agency's decision as the circuit court, and the circuit court's decision enjoys no presumption of correctness. We give great weight to the findings and inferences made by the agency on factual ques-

---

1. County and SDML filed a notice of review and argue that the first injury was not a major contributing cause of the second injury and was therefore not compensable. Department's finding to the contrary was affirmed on appeal to the Hughes County Circuit Court in a separate action in March 2000. No appeal was taken from the court's decision and we find we are without jurisdiction to consider the matter here.

tions. We apply the clearly erroneous standard to these findings of fact meaning we carefully review the entire record and will reverse only if we are "definitely and firmly convinced a mistake has been committed...." Agency decisions concerning questions of law, however, are "fully reviewable." In addition, "we review findings based on deposition testimony and documentary evidence under a de novo standard of review."

*Grauel*, 2000 SD 145 at ¶ 7, 619 N.W.2d at 262 (internal citations omitted).

## DECISION

[¶ 8.] Sandner argues that Department erred in finding he was not permanently and totally disabled. Whether a person is totally and permanently disabled is governed by SDCL 62–4–53: [2]

An employee is permanently totally disabled if the employee's physical condition, in combination with the employee's age, training, and experience and the type of work available in the employee's community, cause the employee to be unable to secure anything more than sporadic employment resulting in an insubstantial income. An employee has the burden of proof to make a prima facie showing of permanent total disability. The burden then shifts to the employer to show that some form of suitable work is regularly and continuously available to the claimant in the community. An employee shall introduce evidence of a reasonable, good faith work search effort unless the medical or vocational findings show such efforts would be futile. The effort to seek employment is not reasonable if the employee places undue limitations on the kind of

work the employee will accept or purposefully leaves the labor market. An employee shall introduce expert opinion evidence that the employee is unable to benefit from vocational rehabilitation or that the same is not feasible.

If an employee chooses to move to an area to obtain suitable employment that is not available within the employee's community, the employer shall pay moving expenses of household goods not to exceed four weeks of compensation at the rate provided by § 62–4–3.

[¶ 9.] The terms used in SDCL 62–4–53 are defined in SDCL 62–4–52 as follows:

(1) "Community," the area within sixty road miles of the employee's residence unless:

(a) The employee is physically limited to travel within a lesser distance;

(b) Consideration of the wages available within sixty road miles and the cost of commuting to the job site makes it financially infeasible to work within such a distance;

(c) An employee has expanded the employee's community by regularly being employed at a distance greater than sixty road miles of the employee's residence, in which case community shall be defined as that distance previously traveled.

(2) "Sporadic employment resulting in an insubstantial income," employment that does not offer an employee the opportunity to work either full-time or part-time and pay wages equivalent to, or greater than, the workers' compensation benefit rate

---

2. In workers compensation cases the law in effect on the date of the injury governs the rights of the parties. *Loewen v. Hyman Freightways, Inc.*, 1997 SD 2 ¶ 9, 557 N.W.2d 764, 766. In this case, the applicable statute is the pre–1999 amendment version of SDCL 62–4–53 and 62–4–52.

applicable to the employee at the time of the employee's injury. Commission or piece-work pay may or may not be considered sporadic employment depending upon the facts of the individual situation.

[¶ 10.] There are two ways for a claimant to make a prima facie showing necessary to fall under the odd-lot category:

First, if the claimant is "obviously unemployable," then the burden of production shifts to the employer to show that some suitable employment within claimant's limitations is actually available in the community. A claimant may show "obvious unemployability" by: 1) showing that his "physical condition, coupled with his education, training and age make it obvious that he is in the odd-lot total disability category," or 2) "persuading the trier of fact that he is in the kind of continuous, severe and debilitating pain which he claims."

Second, if " 'the claimant's medical impairment is so limited or specialized in nature that he is not obviously unemployable or regulated to the odd-lot category,' then the burden remains with the claimant to demonstrate the unavailability of suitable employment by showing that he has made 'reasonable efforts' to find work" and was unsuccessful. If the claimant makes a prima facie showing based on the second avenue of recovery, the burden shifts to the employer to show that "some form of suitable work is regularly and continuously available to the claimant." *Even though the burden of production may shift to the employer, however, the ultimate burden of persuasion remains with the claimant.*

*McClaflin v. John Morrell & Co.*, 2001 SD 86, ¶ 8–9, 631 N.W.2d 180, 183 (internal citations omitted) (emphasis added).

[¶ 11.] Sandner does not argue that he suffers severe and debilitating pain that renders him obviously unemployable. In fact, at the time of the hearing he was working thirty-five hours per week as a nursing assistant. Therefore, he must meet the second prong of the test and prove the unavailability of suitable employment by showing that he has made reasonable efforts to find work and was unsuccessful.

## ISSUE ONE

[¶ 12.] **Whether Sandner met the initial burden of production.**

[¶ 13.] The employee has the burden of proof to make a prima facie showing of permanent total disability. SDCL 62–4–53. Department found that Sandner met his initial burden of proof. The test to determine whether a prima facie case has been established is whether there "are facts in evidence which if unanswered would justify persons of ordinary reason and fairness in affirming the question which the plaintiff is bound to maintain." *Rosen's Inc. v. Juhnke* 513 N.W.2d 575, 577 (S.D.1994).

[¶ 14.] Sandner introduced into evidence two job logs that indicated that he sought employment with as many as 140 employers in many locations including the South Dakota cities of Sioux Falls, Tea, Mitchell, Parker, Ellis, Salem, Crooks, Baltic, Lennox, Canistota, and Montrose.[3] Sandner registered with Job Service, completed a career assessment inventory, and participated in the work ad-

---

3. County disputes the gross number of employers that Sandner claims to have contacted. County points to handwritten notes on the job logs which indicate that Sandner may not have actually contacted many of the employers listed. Department found that Sandner contacted dozens of employers. This finding is not clearly erroneous.

justment-training program. Sandner also worked with the South Dakota Rehabilitation Services program where he was assigned to work with Deb Brinkman, a rehabilitation counselor. Brinkman assisted Sandner in retraining and finding new employment. .

[¶ 15.] Brinkman administered the General Aptitude Test Battery (GATB) which measures general learning ability, hand-eye coordination, math skills, and verbal and communication skills. Brinkman believed that a GED would not be beneficial in increasing Sandner's wages to meet his compensation rate. Brinkman also opined that Sandner would have difficulty with vocational training but she did not believe that such training was unfeasible.

[¶ 16.] Sandner hired Rick Ostrander, a vocational rehabilitation counselor, who testified that Sandner was permanently and totally disabled under South Dakota law. His conclusion was based on some of Sandner's medical records, job logs, vocational assessments, and discussions with Sandner.

[¶ 17.] Thus, Department's finding that Sandner met his burden of production is not clearly erroneous. Sandner brought forth evidence which, if unchallenged, would lead reasonable persons to believe that he made reasonable, good faith efforts to find suitable employment but was unsuccessful. This evidence, if believed, tends to show that Sandner was unable to obtain anything more than sporadic employment resulting in insubstantial income and that he was permanently and totally disabled. This effectively shifted the burden of production to County and SDML to show that some form of suitable work is regularly and continuously available to the claimant in the community. SDCL 62–4–53; *McClaflin, supra.*

## ISSUE TWO

[¶ 18.] **Whether the County and SDML met its burden of production.**

■ [¶ 19.] Bruce Rogers, a rehabilitation consultant who was employed by County and SDML to assist Sandner in attaining suitable employment, testified that Sandner was not totally and permanently disabled because there were many jobs open and available within Sandner's community that would pay him a suitable wage. Rogers' opinion was based upon a job search he personally conducted for Sandner. Rogers also took into consideration the physical restrictions imposed by Dr. McKenzie.

[¶ 20.] Thus, Department's finding that County and SDML also met their burden of production is not clearly erroneous. Rogers' findings and recommendations are discussed in more detail below.

## ISSUE THREE

[¶ 21.] **Whether Sandner met the burden of persuasion.**

A. *Sandner failed to prove that he made a reasonable, good faith work search effort or that such efforts would be futile.*

■ [¶ 22.] Although the burden of production may shift to the employer, the ultimate burden of persuasion remains with the claimant. *McClaflin, supra; Shepherd v. Moorman Mfg.,* 467 N.W.2d 916, 918 (S.D.1991). Sandner was required to introduce evidence of a reasonable, good faith work search effort unless the medical or vocational findings show such efforts would be futile. SDCL 62–4–53. The effort to seek employment is not reasonable if the employee places undue limitations on the kind of work the employee will accept or purposefully leaves the labor market. *Id.*

■ [¶ 23.] Ostrander testified that Sandner made a reasonable, good faith,

albeit unsuccessful, work search effort. Department rejected Ostrander's testimony as having no solid basis in fact for two reasons. The first is that Ostrander did not conduct an actual job search. The second is that Ostrander was not aware of Dr. McKenzie's opinion regarding Sandner's physical restrictions. "The value of the opinion of an expert witness is no better than the facts upon which it is based. It cannot rise above its foundation and proves nothing if its factual basis is not true." *Johnson v. Albertson's*, 2000 SD 47, ¶ 25, 610 N.W.2d 449, 455.

[¶ 24.] Rogers, on the other hand, identified specific jobs that would be suitable for Sandner. The jobs met or exceeded his workers compensation rate and were compatible with his physical limitations.

[¶ 25.] Rogers identified job leads in Sioux Falls that he believed would pay higher than the workers compensation rate. Sandner had lived in Canistota and commuted to Sioux Falls for years. Rogers testified, however, that Sandner was not willing to go to Sioux Falls unless the wage was substantially higher. Sioux Falls was within Sandner's community because it is within 60 road miles of his residence and because Sandner had regularly commuted to Sioux Falls in the past. Sandner did not present any evidence that the cost of the commute would make employment in Sioux Falls financially infeasible. In fact, both Brinkman and Ostrander agreed that employers in Sioux Falls were paying $9.00 per hour for menial labor. That amount is well above Sandner's workers compensation rate. There is no evidence that Sandner has any physical limitations that would prevent him from making the commute to Sioux Falls.

[¶ 26.] Additionally, Rogers testified that Sandner did not follow up on 32 of 95 job leads that he provided. Rogers also testified that of the job referrals that Sandner did follow up, he did not do so until after most of the jobs were filled. Department found Rogers' opinion carried greater weight than that of Brinkman because Rogers conducted a job search specifically for Sandner while Brinkman did not.

[¶ 27.] Based upon a review of all of the evidence, we find that Department was not clearly erroneous in concluding that Sandner did not make a reasonable, good faith work search effort.

B. *Sandner failed to prove that he would not benefit from vocational rehabilitation or that such rehabilitation was not feasible.*

[¶ 28.] Sandner was required to introduce expert opinion evidence that he was unable to benefit from vocational rehabilitation or that the same was not feasible. SDCL 62–4–53. Relying on Sandner's GATB scores, Brinkman testified that Sandner would probably not benefit from a GED and would have difficulty with vocational training. However, she did not testify that retraining was not feasible. Ostrander, also relying on Sandner's GATB scores, did not explore any retraining options. Sandner did not pursue any retraining based, in part, on his dislike for school.

[¶ 29.] Rogers, on the other hand, testified that Sandner would benefit from vocational rehabilitation and particularly from training in basic keyboarding and computers. Rogers based his opinion on Sandner's GATB scores, particularly his finger dexterity scores. Although such training would be challenging, Rogers had no doubt that it would benefit Sandner and would enhance his employability, accommodate his restrictions, and pay him a wage in excess of his workers' compensation rate. Rogers suggested that such training could lead to work in customer service positions that were available in the Sioux Falls com-

munity. Department concluded that Sandner failed to establish through expert opinion that he was unable to benefit from vocational rehabilitation or that the same was not feasible.

[¶ 30.] We find that Department was not clearly erroneous in concluding that Sandner would benefit from vocational rehabilitation.

## CONCLUSION

[¶ 31.] This case was primarily a trial of experts and all experts testified live at the hearing. Thus, deference must be given to Department which had an opportunity to observe the experts' demeanors and weigh their credibility. *Goebel v. Warner Transportation*, 2000 SD 79, ¶ 32, 612 N.W.2d 18. The trier of fact is free to accept all of, part of, or none of, an expert's opinion. *Johnson, supra*, at ¶ 26, 610 N.W.2d at 455. Furthermore, the reviewing agency is not required to accept the testimony of the claimant and is free to choose between conflicting testimony. *Id.*

[¶ 32.] Under our standard of review, we cannot say that Department's findings were clearly erroneous because after a careful review of the entire record we are not definitely and firmly convinced that a mistake has been made.

[¶ 33.] We find the remaining issues raised by the parties to be without merit.

[¶ 34.] GILBERTSON, Chief Justice, and AMUNDSON and KONENKAMP, Justices, and STEELE, Circuit Judge, concur.

[¶ 35.] BASTIAN, Circuit Judge, for SABERS, Justice, disqualified.

[¶ 36.] STEELE, Circuit Judge, for ZINTER, Justice, disqualified.