#23938, #23943-a-JKM

**2006 SD 80**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

DANNY D. WISE,                 Claimant, Appellee,
                                      Cross-Appellant and Appellant,

     v.

BROOKS CONSTRUCTION
SERVICES and ACUITY, A         Employer, Insurer, Appellants,
MUTUAL INSURANCE COMPANY,    Cross-Appellees and Appellees,

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE KATHLEEN CALDWELL
Judge

\* \* \* \*

BRAM WEIDENAAR of
Hoy Trial Lawyers             Attorney for claimant, appellee,
Sioux Falls, South Dakota       cross-appellant and appellant.

J. G. SHULTZ
JENNIFER L. WOLLMAN of       Attorneys for employer, insurer,
Woods, Fuller, Shultz & Smith    appellants, cross-appellees and
Sioux Falls, South Dakota       appellees.

\* \* \* \*

ARGUED ON MAY 23, 2006

OPINION FILED **08/23/06**

#23938, #23943

MEIERHENRY, Justice

[¶1.] Danny Wise appeals a circuit court decision affirming the South Dakota Department of Labor's (Department) determination denying permanent and total disability benefits pursuant to the odd-lot doctrine. Brooks Construction Services and Acuity Insurance Company (collectively referred to as Employer) appeal the circuit court's decision affirming the Department's determination that Wise proved that his December 5, 2001, injury was a major contributing cause of his need for treatment and surgery to his lumbar spine and that any recovered medical expenses could be paid through Wise's counsel. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

[¶2.] Shortly after graduating from high school in 1974, Wise began working for Employer as a concrete laborer and foreman and remained with the company for the next twenty-seven years. Over the course of his employment, Wise suffered several work-related injuries, including three separate injuries to his back, a knee injury and a neck injury. Wise sought treatment for these injuries from Dr. David Hoversten, an orthopedic surgeon. Dr. Hoversten performed surgery on Wise's back in 1990, 1995, and 1998, including a fusion at the L5-S1 level.

[¶3.] This appeal involves two separate injuries Wise suffered in 2001. The first injury occurred on July 5, 2001, when Wise was struck in the head by a fifty-five gallon drum of cement cure. The blow knocked him unconscious, but he was able to finish out the work day. A co-worker drove him home and his wife took him to the emergency room that evening. Wise continued to have pain in his neck and sought treatment from Dr. Fahrendorf, a chiropractor, from July 11, 2001 to

December 10, 2001. Wise then sought treatment from Dr. Hoversten who in turn referred Wise to Dr. Wilson Asfora, a neurologist. On May 9, 2002, Dr. Asfora performed an inferior cervical diskectomy with cord decompression followed by a fusion at the C5-6. Dr. Asfora released Wise from active treatment on January 14, 2003. Upon his release, Wise was assigned a fifteen percent permanent partial disability rating by Dr. John Dowdle. Employer paid permanent partial disability benefits for this injury.

[¶4.] Subsequent to the July injury, Wise returned to work for Employer and was injured the second time on December 5, 2001, when he slipped on a muddy ramp at the job site, hyper-extending his back. Due to the injury, Wise left the job site without notifying his superiors. The next day, Wise was terminated from his employment for leaving the work site without notifying his superiors. Also that day, Wise completed the South Dakota Employers First Report of Injury.

[¶5.] Wise sought treatment from Dr. Hoversten who, after examining him, determined that Wise had sustained an acute back strain with sciatica probably without disk rupture. Although Wise was unemployed, Dr. Hoversten advised him not to engage in any work-related activities for one week. Wise returned to Dr. Hoversten on December 20, 2001, still in pain. Dr. Hoversten noted that there was an appearance of significant disk strain and ordered an MRI. Dr. Hoversten again advised him not to engage in any work-related activities for an additional two weeks. Wise's condition did not improve. Dr. Hoversten saw Wise again on January 3, 2002. Based on the MRI results, Dr. Hoversten noted a right-sided disk

bulge with mild pressure on the nerve root to the right at the L3-4 level. He recommended a decompressive laminectomy at the L3-4 level.

[¶6.]        Initially, Dr. Hoversten thought that the need for treatment and surgery at the L3-4 level was not caused by Wise's work-related injury. His opinion was that the slip in the mud and back hyper-extension was not a major contributing cause of the need for surgery. Dr. Hoversten believed the major cause was chronic degeneration with stenosis at the L3-4 level. Based on Dr. Hoversten's opinion, Employer denied Wise's claim for workers' compensation benefits on January 24, 2002.

[¶7.]        Subsequently, Dr. Hoversten changed his opinion as to what caused the need for Wise's surgery. While performing a decompressive laminectomy at the L3-4 level on September 22, 2002, Dr. Hoversten discovered a fracture of the inferior facet on the left at the L3-4 level. After making this discovery, Dr. Hoversten no longer believed that the problems Wise was experiencing were degenerative in nature. He, instead, acknowledged that the slip and hyper-extension on December 5, 2001, was the mechanism of injury leading to the need for the surgery. He noted that "this stenosis was not the typical old-age stenosis but is an injury stenosis due to the facet fracture, and for that reason work comp should be responsible for that coverage."

[¶8.]        Although Wise was released from care and allowed to return to work in November 2002, he continued to experience neck pain. He again saw Dr. Asfora who prescribed physical therapy which Wise completed in February 2003. In March 2003, Dr. Hoversten concluded that Wise had reached maximum medical

improvement. Wise has not sought or received any medical treatment for his neck or back since March 2003.

[¶9.] After his termination from Employer and since his recovery, Wise attempted to obtain suitable employment. Wise was employed by Jans Corporation as a construction worker for three days in August 2002. Wise left this employment as the work was outside his physical restrictions. Wise was then employed by Jay McDonald Construction for six weeks as a cut man for a siding crew. After the siding jobs were completed, the crew went on to framing jobs. Wise was forced to quit as the work again fell outside of his physical restrictions.

[¶10.] In April 2003, Wise undertook a more extensive employment search by looking at the classifieds in the paper, contacting people he knew in the industry and contacting the Career Service Center. Wise also contacted the South Dakota Division of Vocational Rehabilitation. He was referred to the Volunteers of America program for a functional capacities evaluation (FCE). The FCE showed that Wise was capable of performing light to medium level work. He could work an eight hour day. He could sit for four hours at forty-five minute durations, stand for six hours at sixty minute durations, and walk six hours frequently. The FCE indicated that occasionally Wise could lift 30.2 pounds above his shoulders, 30.2 pounds off the floor, carry 32 pounds and push/pull 56.3 pounds.

[¶11.] Wise next obtained employment with Austad's Golf in April 2004. While the job was described as temporary, Wise had been employed for nineteen weeks at the time of the hearing. Wise worked as an order packer twenty-two to

twenty-five hours a week and was paid $7.00 an hour. This wage was less than his workers' compensation rate of $468 per week.

[¶12.] Wise filed for workers' compensation benefits and a hearing was held on August 12, 2004. The only medical evidence provided was Wise's medical records and the deposition testimony of Dr. Hoversten. Both sides presented expert testimony relating to Wise's ability to find comparable work in the Sioux Falls area and his ability to benefit from vocational retraining. Wise's expert, Thomas Audet, testified that Wise was physically able to perform light duty work, the occupations identified as being suitable for Wise would pay less than his temporary total disability rate and that Wise's academic aptitude and orientation would preclude him from competing in any sort of vocational rehabilitation program. Overall, Audet was of the opinion that Wise was permanently and totally disabled pursuant to the odd-lot doctrine.

[¶13.] Employer's expert, Thomas Karrow, disagreed. Karrow identified several potential employers in Sioux Falls that may have positions that were the same or similar to Wise's job with Employer. He further testified that Wise would benefit from vocational rehabilitation programs and specifically identified programs at Southeastern Technical Institute (STI) that he believed were appropriate for Wise.

[¶14.] After having heard and considered the testimony of the witnesses and the exhibits and evidence presented by the parties, the Department deemed the lower back injury sustained by Wise on December 5, 2001, to be compensable and ordered that Employer pay Wise's medical expenses directly to counsel for Wise.

Further, the Department found that Wise had not shown that he was unemployable and denied Wise's permanent and total disability benefits pursuant to the odd-lot doctrine.

[¶15.]       Employer appealed the Department's decision that Wise's injury on December 5, 2001, was a major contributing cause for his need of treatment and surgery.  Employer further appealed the Department's decision that Wise's medical expenses be paid through his counsel's office.  Wise filed a cross-appeal, claiming the Department erred in denying permanent and total disability benefits pursuant to the odd-lot doctrine.  The circuit court affirmed the Department's decision in all respects.  Wise filed this appeal raising one issue:

> Whether the circuit court erred as a matter of law in affirming the Department's denial of permanent and total disability benefits pursuant to the odd-lot doctrine.

Employer filed a notice of review raising two issues:

> 1.       Whether Wise proved that his December 5, 2001, injury was a major contributing cause of his need for treatment and surgery to his lumbar spine.
>
> 2.       Whether Wise is entitled to have any recovered medical expenses paid through his counsel's office.

Because Wise's injury must be determined to be a major contributing cause before odd-lot benefits can be determined, we address issue two first.

**STANDARD OF REVIEW**

[¶16.]       "This Court's standard of review for an administrative agency decision is well settled and governed by SDCL 1-26-37, which provides in relevant part that on review we 'shall give the same deference to the findings of fact, conclusions of law, and final judgment of the circuit court as it does to other appeals from the

circuit court.'" Holscher v. Valley Queen Cheese Factory, 2006 SD 35, ¶28, 713 NW2d 555, 564. "The Department's factual findings and credibility determinations are reviewed under the clearly erroneous standard." Kuhle v. Lecy Chiropractic, 2006 SD 16, ¶15, 711 NW2d 244, 247 (citing Enger v. FMC, 1997 SD 70, ¶10, 565 NW2d 79, 83) (citation omitted). "We will reverse those findings only if we are definitely and firmly convinced a mistake has been made." *Id.* (citing Gordon v. St. Mary's Healthcare Center, 2000 SD 130, ¶16, 617 NW2d 151, 157.) "However, 'we review findings based on deposition testimony and documentary evidence under the *de novo* standard of review.'" *Holscher*, 2006 SD 35, ¶29, 713 NW2d at 564 (citing Mudlin v. Hills Materials Co., 2005 SD 64, ¶5, 698 NW2d 67, 71 (citation omitted)). "Questions of law are reviewed *de novo*. Mixed questions of law and fact are also fully reviewable." *Kuhle,* 2006 SD16, ¶15, 711 NW2d at 247 (citing *Enger*, 1997 SD 70, ¶10, 565 NW2d at 83) (additional citations omitted). "Ultimately, the claimant retains the burden of proving all facts essential to compensation." *Id.* (citing Clausen v. Northern Plains Recycling, 2003 SD 63, ¶7, 663 NW2d 685, 687 (citation omitted)).

## DECISION

*Whether Wise's December 5, 2001, Injury was a Major Contributing Cause of His Need for Treatment and Surgery.*

[¶17.]     Wise "had the burden to prove by a preponderance of the evidence 'all the facts essential to compensation.'" Horn v. Dakota Pork, 2006 SD 5, ¶14, 709 NW2d 38, 41-42 (citing Grauel v. South Dakota School of Mines and Technology, 2000 SD 145, ¶11, 619 NW2d 260, 263) (quoting Westergren v. Baptist Hosp., 1996 SD 69, ¶10, 549 NW2d 390, 393). "Our law requires a claimant to establish that his

injury arose out of his employment by showing a causal connection between his employment and the injury sustained." *Id*. "The claimant also must prove by a preponderance of medical evidence, that the employment or employment related injury was a major contributing cause of the impairment or disability." *Id*. (citing Arends v. Dacotah Cement, 2002 SD 57, ¶15, 645 NW2d 583, 588).

[¶18.] Here, the only medical evidence was provided by Wise. Wise introduced his medical records and the deposition of Dr. Hoversten to prove that his slip in the mud and resulting back hyper-extension was a major contributing cause of his need for treatment and surgery. Therefore, we review this evidence under the *de novo* standard of review. *Holscher*, 2006 SD 35, ¶28, 713 NW2d at 564 (citations omitted).

[¶19.] Wise had a thirteen-year treatment history with Dr. Hoversten, who saw him for all of his prior back and neck injuries. Initially, Dr. Hoversten thought that the December 5, 2001, slip in the mud was not a major contributing cause of Wise's need for treatment. He said that the "major cause [was] chronic degeneration with stenosis at L3-4. Injury was an acute aggravation." It was only *after* Dr. Hoversten performed a decompressive laminectomy at the L3-4 level that he discovered a fracture of the inferior facet on the left at the L3-4 level. After this discovery, Dr. Hoversten changed his opinion. It was his revised opinion that "this stenosis [was] not the typical old-age stenosis but [was] an injury stenosis due to facet fracture, and for that reason work comp should be responsible for that coverage."

[¶20.]    During Dr. Hoversten's deposition he explained his change of opinion.

> Q:    Okay.  Let me skip the second one there. What I want to understand from this, I guess, is that at the time that you wrote this note in January of 2002, your conclusion was that the gentleman suffered solely from chronic degeneration with an aggravation of some sort. True?
> A:    Yes.
> Q:    You changed your mind, did you?
> A:    Yes.
> Q:    Tell me why.
> A:    During surgery we found a fracture of the inferior facet on the right at L3-4.  This had been there for some time.  I don't know how long.  I went back and looked on my X-rays, and it has been there at least two to three years.  When it's a fracture with instability from the fracture, it makes it an injury-based problem.  True, there's degeneration associated with it, but based upon finding of fracture of the facet, I changed my mind that it wasn't strictly degenerative.

Dr. Hoversten then explained, based on these X-rays, he could not be certain when the fracture occurred, or how it occurred but, Wise had suffered this fracture sometime between 1991 and 1997.  Dr. Hoversten further explained that the fracture was from an extension injury, or "extending the back way back over backwards."  He explained that prior to the December 5, 2001, injury he last saw Wise on August 10, 1999.  At that time, Wise was not complaining of any radicular symptoms in his lower extremities. Dr. Hoversten explained:

> Q:    We're getting at, I think the crux of the deposition here is the relationship between that previous facet fracture and the mechanism of injury which occurred on 12-13 [sic]-2001.  It appears that after the mechanism of injury there's onset of new symptoms, *because he obviously wasn't a surgical candidate prior to that mechanism of injury, was he?* (emphasis added)
> A:    *No, he wasn't.* (emphasis added)
> Q:    So can you explain for us the relationship between the prior facet fracture and whatever he may have done when he slipped in the mud?
> A:    Well, with the facet fracture, there's some increased instability.  There's some buildup of spur and extra swelling around the area

-9-

> of the fracture, and an extension would cause the pushing into the nerve root of this extra material. So, originally I viewed it as an aggravation of the problem.
>
> Q:   And that would be related to the work injury, that aggravation was a mechanism that – the work related injury was a mechanism of the aggravation, was it not?
>
> A:   Yes. That was – you know, he was doing pretty good for a couple of years, and then this happens. Then it makes it worse. Originally I thought it was just a stenosis thing, and it was only after I did surgery and found the fracture of the facet with the extra swelling, I said, "Hey, something else is behind this."

He further stated:

> Q:   We've got two time lines here going, don't we, Doctor? We have the facet fracture time line, as to when that actually occurred, until you discovered it in the surgery in 2002. Then when he became symptomatic after the fall in the mud. Right?
>
> A:   Well, *clearly that fall in the mud was an aggravation that led to more radiculopathy and the need to do more surgery, whereas before there was no need to do the surgery.* (emphasis added)

[¶21.]   Employer did not present medical evidence to refute Dr. Hoversten's opinions. Nevertheless, Wise bore the burden of proving a causal connection between his condition and his work-related injury. SDCL 62-1-1 provides that a compensable injury be "established by medical evidence," and that "[n]o injury is compensable unless the employment or employment related activities are a major contributing cause of the condition complained of." In applying the statute, we have held "a worker's compensation award cannot be based on possibilities or probabilities, but must be based on sufficient evidence that the claimant incurred a disability arising out of and in the course of his employment." Day v. John Morrell & Co., 490 NW2d 720, 724 (SD 1992) (citation omitted). We have further said "South Dakota law requires [Wise] to establish by medical evidence that the 'employment or employment conditions are a major contributing cause of the

-10-

condition complained of.' 'A possibility is insufficient and a probability is necessary.'" Brady Memorial Home v. Hantke, 1999 SD 77, ¶11, 597 NW2d 677, 680 (internal citation and emphasis omitted) (citing Maroney v. Aman, 1997 SD 73, ¶9, 565 NW2d 70, 73 (citation omitted)).

[¶22.] Employer argues that Wise failed to meet his burden of proof because Dr. Hoversten's opinion did not use the exact words of the statutes. Employer claims that Dr. Hoversten needed to specifically say that work was "a major contributing cause" under SDCL § 62-1-1(7)(b). Employer contends that without these "magic words," Wise cannot prevail. The Department did not require the "magic words." It determined that even though Dr. Hoversten did not "specifically state that [Wise's] employment related injury is and remains a major contributing cause of his disability, impairment or need for treatment, such opinion can be gleaned from the totality of Dr. Hoversten's testimony." Employer relies on *Byrum v. Dakota Wellness Found.*, in support of its argument. 2002 SD 141, 654 NW2d 215. *Byrum*, however, does not stand for the proposition that an expert's opinion fails because it omits the exact words, "major contributing cause."

[¶23.] The case in which this Court did reverse because the phase "major contributing cause" was not used can be distinguished from the present case. In *Brady*, this Court was reviewing the deposition testimony of three doctors, two of which did not specifically use the phrase and one that did. The one doctor that used the phrase testified that it was *not* a major contributing cause. 1999 SD 77, ¶13-15, 597 NW2d at 681. This Court concluded "[w]e recognized that Hantke's 'proof need not arise to a degree of absolute certainty; however, an award may not be based

upon mere possibility or speculative evidence.'" *Id.* ¶16. "The evidence here established, at best, a possibility. Only Dr. Dowdle provided an unequivocal opinion of whether Hantke's employment was a major contributing cause of her condition; he stated that it was not." *Id.* ¶17 (emphasis omitted).

[¶24.]         In the present case, the Department determined Wise had met his burden of proof based upon all of the evidence. The ALJ reasoned as follows:

> Employer's argument that Dr. Hoversten's opinions lack foundation and are speculative is rejected. To the contrary, Dr. Hoversten's opinions are well-founded and rise to the level necessary to establish a causal relationship between Claimant's December 5th work injury and his need for treatment and surgery. First, Dr. Hoversten was Claimant's treating physician for over thirteen years. Dr. Hoversten was very familiar with Claimant's medical and work history. Further, Dr. Hoversten had opportunity to observe Claimant's back condition as he performed all of the back surgeries, including the operation in September 2002.
>
> Although Dr. Hoversten did not specifically state that Claimant's employment related injury is and remains a major contributing cause of his disability, impairment or need for treatment, such opinion can be gleaned from the totality of Dr. Hoversten's testimony. . . . For example, Dr. Hoversten opined that "this stenosis is not the typical old-age stenosis but is an injury stenosis due to facet fracture[.]" Dr Hoversten then stated that a fracture with instability from the fracture makes it an injury-based problem. Finally, Dr. Hoversten stated, "with the facet fracture, there's some increased instability. There's some buildup of spur and extra swelling around the area of fracture, *and an extension would cause the pushing into the nerve root of this extra material."* (emphasis in original).
>
> Based upon Dr. Hoversten's testimony, claimant has not only met his burden, but exceeded his burden of proof. Claimant established by a preponderance of the evidence that his work related injury is and remains a major contributing cause of his disability, impairment or need for treatment.

A review of the record supports the Department's decision. Dr. Hoversten, Wise's doctor for the past thirteen years, originally believed that the slip was not a major

contributing cause. However, after doing surgery, he changed his opinion. He testified that Wise was not a surgical candidate prior to the slip in the mud and that "he (Wise) was doing pretty good for a couple of years, and then this happens. Then it makes it worse." Furthermore, and importantly, Dr. Hoversten testified that "*clearly* that fall in the mud was an aggravation that led . . . to the need to do more surgery, whereas before there was no need to do the surgery."(emphasis added). Finally, it must also be remembered that Dr. Hoversten's medical records of December 2001, immediately following Wise's injury, further support causation. Significantly, on December 13, Dr. Hoversten recorded that Wise was there "with acute low back and left leg pain. He stepped in the mud and hyper-extended his back. He had the onset of some pain in the back with radiation into the left leg." These *new* symptoms ultimately led to the surgery at issue. Considering the totality of the medical evidence, Dr. Hoversten established that the December 5, 2001 injury caused new symptoms that required the surgery. His testimony was not speculative, rather it was precise and well supported. *Horn*, 2006 SD 5, ¶14, 709 NW2d at 42 (citing *Byrum*, 2002 SD 141, ¶16, 654 NW2d at 219). We agree with the ALJ that Dr. Hoversten's opinions are well founded and establish a causal relationship between Wise's December 5, 2001, work injury and his need for treatment.

[¶25.]     We also note that other courts in addressing this issue have refused to require pronouncement of the "magic words." *See* AT&T Wireless Services Inc. v. Castro, 896 So2d 828, 833, n6 (FlaDistCtApp 2005) ("the statutory standard may be established without using magic words"); Hunt v. Exxon Co. USA & GAB, 747 So2d

966, 973 (FlaDistCtApp 1999) (holding "The applicable legal standard may be established without pronouncement of the magic words, ['major contributing cause'], provided the totality of the evidence demonstrates a causal relationship between the claimant's injury and employment with the appropriate quantum of proof."); Maid v. Sykes, 763 So2d 377, 383 (FlaDistCtApp 2000) (same for "reasonable medical certainty"); Jensen v. City of Pocatello, 135 Idaho 406, 18 P3d 211 (2000) (holding "No special verbal formula is necessary when, as here, a doctor's testimony plainly and unequivocally conveys his conviction that events are causally related.") (citing Paulson v. Idaho Forest Indus., Inc., 99 Idaho 896, 591 P2d 143 (1979), overruled on other grounds by Jones v. Emmett Manor, 134 Idaho 160, 997 P2d 621 (2000)); Gooby v. Lake Shore Management Co., 136 Idaho 79, 85, 29 P3d 390, 396 (2001) (holding "Whether or not the Commission can rely upon a medical opinion, however, does not depend upon the exact language ['reasonable degree of medical probability'], used by the expert in expressing that opinion."); Swanson v. Park Place Automotive, 267 Neb 133, 144, 672 NW2d 405, 415 (2003) (holding "We have long held, in the context of evaluating an expert medical opinion, that such testimony need not be couched in 'magic words' such as 'reasonable medical certainty' or 'reasonable probability.'"); Owen v. American Hydraulics, Inc., 258 Neb 881, 889, 606 NW2d 470, 477 (2000) (same (citing Frank v. A&L Insulation, 256 Neb 898, 594 NW2d 586 (1999)); Columbia Forest Products v. Woolner, 177 OrApp 639, 646, 34 P3d 1203, 1207-07 (2001) (holding "in other workers' compensation contests, we have held that evidence need not consist of 'magic words' in order to adequately support the Board's findings."); SAIF v. Strubel, 161 OrApp 516, 521-22,

984 P2d 903 (1999) (holding that an expert's opinion need not be ignored because it fails to include the magic words "major contributing cause"); Bank of Newport v. Wages, 142 OrApp 145, 150-51, 919 P2d 1189 (1996) (same); Freightliner Corp v. Arnold, 142 OrApp 98, 105, 919 P2d 1192 (1996) (same); Moore v. Douglas County, 92 OrApp 255, 258, 757 P2d 1371 (1988) (same for "reasonable medical probability"); Harrison v. Texas Emp Ins. Ass'n., 747 SW2d 494, 499 (TexApp 1988) ("medical doctor, testifying as an expert, need not use the exact 'magical' words of 'reasonable medical probability', if the expert's testimony is adequate and sufficient under the total circumstances.") (citing Stodghill v. Texas Emp. Ins Ass'n, 582 SW2d 102 (Tex 1979)); Repass v. Workers' Compensation Div., 212 WVA 86, 104, 569 SE2d 162, 180 (2002) (discouraging reliance on magic words and urging due consideration to actual content of medical reports).

[¶26.]        Therefore, Wise supplied sufficient medical evidence that the slip and fall, which caused him to hyper-extend his back, was a major contributing cause of his need for treatment and surgery.  Thus, Employer's liability was established. Steinberg v. South Dakota Department of Military and Veterans Affairs, 2000 SD 36, ¶29, 607 NW2d 596, 606.  The Department's decision is affirmed.

*Denial of Permanent and Total Disability Benefits Pursuant to the Odd-Lot Doctrine.*

[¶27.]        "Whether a claimant is entitled to odd-lot disability benefits is a question of fact subject to review under the clearly erroneous standard."  Kassube v. Dakota Logging, 2005 SD 102, ¶34, 705 NW2d 461, 467 (citing *Enger*, 1997 SD 70, ¶22, 565 NW2d at 85).  Therefore, the "Department's determination that claimant failed to make the required prima facie showing [that he is obviously unemployable]

will not be overturned unless we find that the determination was clearly erroneous."

Lends His Horse v. Myrl & Roy's Paving Inc., 2000 SD 146, ¶9, 619 NW2d 516, 519

(citing Shepherd v. Moorman Mfg., 467 NW2d 916, 919 (SD 1991)).

[¶28.]     Whether a person is totally and permanently disabled is governed by

SDCL 62-4-53, which provides in part:

> An employee is permanently totally disabled if the employee's physical condition, in combination with the employee's age, training, and experience and the type of work available in the employee's community, cause the employee to be unable to secure anything more than sporadic employment resulting in an insubstantial income. An employee has the burden of proof to make a prima facie showing of permanent total disability. The burden then shifts to the employer to show that some form of suitable work is regularly and continuously available to the employee in the community. The employer may meet this burden by showing that a position is available which is not sporadic employment resulting in an insubstantial income as defined in subdivision 62-4-52(2). An employee shall introduce evidence of a reasonable, good faith work search effort unless the medical or vocational findings show such efforts would be futile. The effort to seek employment is not reasonable if the employee places undue limitations on the kind of work the employee will accept or purposefully leaves the labor market. An employee shall introduce expert opinion evidence that the employee is unable to benefit from vocational rehabilitation or that the same is not feasible.

*Id*. There are two ways for Wise to make a prima facie showing necessary to fall

under the odd-lot category.

> First, if the claimant is obviously unemployable, then the burden of production shifts to the employer to show that some suitable employment within claimant's limitations is actually available in the community. A claimant may show obvious unemployability by: 1) showing that his physical condition, coupled with his education, training and age make it obvious that he is in the odd-lot total disability category, or 2) persuading the trier of fact that he is in the kind of continuous, severe and debilitating pain which he claims.

> Second, if the claimant's medical impairment is so limited or specialized in nature that he is not obviously unemployable or regulated to the odd-lot category, then the burden remains with the claimant to demonstrate the unavailability of suitable employment by showing that he has made reasonable efforts to find work and was unsuccessful. If the claimant makes a prima facie showing based on the second avenue of recovery, the burden shifts to the employer to show that some form of suitable work is regularly and continuously available to the claimant. *Even though the burden of production may shift to the employer, however, the ultimate burden of persuasion remains with the claimant.*

Sandner v. Minnehaha County, 2002 SD 123, ¶10, 652 NW2d 778, 783 (internal quotations omitted, emphasis in original (citing McClaflin v. John Morrell & Co., 2001 SD 86, ¶¶8-9, 631 NW2d 180, 183)).

[¶29.]    The Department found that Wise had "established a prima facie case that he was permanently and totally disabled because a good faith work search would be futile." A review of the record shows that Wise provided testimony concerning the steps he had taken to find a job. He had searched the classifieds, contacted Career Service, been appointed a Vocational Rehabilitation counselor, and learned job skills at Volunteers of America. Eventually, Wise obtained his current employment with Austad's Golf earning $7.00 an hour, which was less than his worker's compensation rate. This evidence, "if unchallenged, would lead reasonable persons to believe that he made reasonable, good faith efforts to find suitable employment but was unsuccessful." *Id*. ¶17. This evidence effectively shifted the burden to Employer to show that some form of suitable employment was available to Wise. *Id*.; SDCL 62-4-53.

[¶30.]    Employer provided the testimony of Karrow who identified six different employers that had positions available in Wise's community that paid

wages at or near his workers' compensation rate. Wise admitted that he did not contact any of these employers because he "was more concerned with [his] back than going out and finding a higher paying job." Therefore, the Department's holding that Employer "demonstrated that there were specific positions open and available within Claimant's community that would pay him a suitable wage" was not clearly erroneous.

[¶31.]     "Although the burden of production may shift to the employer, the ultimate burden of persuasion remains with [Wise]." *Sandner*, 2002 SD 123, ¶22, 652 NW2d at 784 (citation omitted). Under SDCL 62-4-53 Wise was required to "introduce expert opinion evidence that [he] is unable to benefit from vocational rehabilitation or that the same is not feasible." *Id*. Wise presented the expert testimony of Audet who testified that Wise lacked the academic orientation and aptitude to compete in any sort of vocational rehabilitation program. He felt that Wise would have difficulty competing in any type of retraining program and that vocational rehabilitation was unrealistic. However, Audet also admitted that although it may be difficult for Wise, retraining was not impossible and that if he completed the course work in a vocational retraining program, his worth in the labor market would go up.

[¶32.]     Employer, on the other hand, presented the expert testimony of Karrow. Karrow testified that Wise would benefit from a retraining program and identified five possible retraining programs at STI available for Wise that met his physical limitations and paid wages higher than his workers' compensation rate. Wise did not inquire into or participate in any of these programs because he did not

consider himself "a school kind of person" and because he did not qualify for educational funding assistance. The Department found that Wise "would benefit from vocational retraining and that it would be feasible despite [Wise's] reluctance to attend such a program." Finally, the Department concluded Wise "failed in his burden of persuasion to establish that he is permanently totally disabled as he would benefit from vocational retraining."

[¶33.] The evidence presented on this issue came from Wise and two experts, Audet and Karrow. All three of these individuals testified live at the hearing.

> Thus, deference must be given to Department which had an opportunity to observe the experts' demeanors and weigh their credibility. The trier of fact is free to accept all of, part of, or none of, an expert's opinion. Furthermore, the reviewing agency is not required to accept the testimony of the claimant and is free to choose between conflicting testimony.

*Sandner*, 2002 SD 123, ¶31, 652 NW2d at 786 (internal citations omitted). Under the clearly erroneous standard of review and a careful review of the record, "we are not definitely and firmly convinced that a mistake has been made." *Id*. ¶32. Therefore, the Department's denial of permanent and total disability benefits under the odd-lot doctrine is affirmed.

*Wise's Medical Expenses Paid Pursuant to the Medical Fee Schedule and Through his Counsel.*

[¶34.] Employer asserts that the Department erred when it ordered Employer to pay Wise's medical bills directly to his counsel and without the benefit of the medical fee schedule under ARSD 47:03:05:05. Employer asserts that the medical bills attached to the Stipulation should be paid directly to the individual medical providers using the medical fee schedule.

[¶35.] At issue is SDCL 62-1-1.3 and its application to this case. "Statutory interpretation and application are questions of law." *Lewis & Clark Rural Water System, Inc. v. Seeba*, 2006 SD 7, ¶12, 709 NW2d 824, 830 (citing *Block v. Drake*, 2004 SD 72, ¶8, 681 NW2d 460, 463 (citation omitted)). This Court interprets statutes "to discover the true intent of the legislature in enacting laws, which is ascertained primarily from the language employed in the statute." *Id.* (citing *Sanford v. Sanford*, 2005 SD 34, ¶13, 694 NW2d 283, 287). "The intent of a statute is determined from what the Legislature said, rather than what the courts think it should have said." *Id.* (citing *Martinmaas v. Engelmann*, 2000 SD 85, ¶49, 612 NW2d 600, 611).

[¶36.] SDCL 62-1-1.3 provides:

> If an employer denies coverage of a claim on the basis that the injury is not compensable under this title due to the provisions of subsections 62-1-1(7)(a), (b), or (c), such injury is presumed to be nonwork related for other insurance purposes, and any other insurer covering bodily injury or disease of the injured employee shall pay according to the policy provisions. If coverage is denied by an insurer without a full explanation of the basis in the insurance policy in relation to the facts or applicable law for denial, the director of the Division of Insurance may determine such denial to be an unfair practice under chapter 58-33. If it is later determined that the injury is compensable under this title, the employer shall immediately reimburse the parties not liable for all payments made, including interest at the category B rate specified in § 54-3-16.

[¶37.] The text of this statute contemplates the situation where an employer has denied coverage of an injury, which is later found to be compensable. That is exactly what happened in this case. Employer denied coverage claiming Wise had not proved that his slip in the mud was a major contributing cause of his need for treatment and surgery. The statute provides "[i]f it is later determined that the

-20-

injury is compensable under this title, *the employer shall immediately reimburse the parties not liable for all payments made,* including interest at the category B rate[.]" SDCL 62-1-1.3 (emphasis added).  This Court has affirmed the Department's decision that Wise's December 5, 2001, injury was a major contributing cause of his need for treatment.  Therefore, the injury is compensable and Employer "shall immediately reimburse the parties not liable for all payments made."  *Id.*

[¶38.]    This statute makes no reference to the medical fee schedule.  The fee schedule Employer wishes to use presupposes that an employer is following the mandates of SDCL 62-4-1, which provides in part: "[t]he employer shall provide necessary first aid, medical, surgical, and hospital services, or other suitable and proper care . . . during the disability or treatment of an employee within the provisions of this title."  If Employer had accepted responsibility for Wise's injury they would have been entitled to the benefits of the fee schedule.  Because they denied Wise's claim, Wise, not Employer, incurred the expense of his treatment and surgery.  An employer cannot deny coverage and then, once a claimant has incurred expenses, only pay the expenses it chooses according to the medical fee schedule.  An employer loses its access to the medical fee schedule when it denies coverage.  Therefore, under SDCL 62-1-1.3, the medical fee schedule is not applicable in this case.  Thus, Employer is liable for the full amount of the medical expenses incurred by Wise.

[¶39.]    Employer further asserts that if they have to pay, they should pay the medical providers individually, not Wise's counsel.  This Court has previously addressed this issue.  In *Lagge v. Corsica Co-op*, this Court held that "[t]he

Department's order is not in contravention with any statute. Furthermore, payment through a claimant's attorney is commonly done and is contemplated by statute." 2004 SD 32, ¶38, 677 NW2d 569, 578. "The Department did not err in requiring [Employer] to pay for [Wise's] medical care through his counsel." *Id*.

[¶40.]     Affirmed.

[¶41.]     GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and ZINTER, Justices, concur.